MARY CHAPMAN *vs.* GEORGE COOK, Town Treasurer.

A town is not ordinarily bound to fence its roads, and where a highway connected with a private way, and there was a defect in the private way some fifty to one hundred feet from the junction of the two ways, *it was held*, that the town was not liable for an accident happening to one who drove off by mistake upon the private way and was injured by reason of such defect, although there was no fence or other mark to show the deviation of the private way.

ACTION OF THE CASE to recover damages of the town of Cumberland for alleged negligence in not keeping a highway known as Blackstone Street in a safe condition.

At the trial of the case at the present term of the court, before Mr. Justice *Potter* and a jury, a verdict was rendered for the defendant, whereupon the plaintiff alleged exceptions and moved for a new trial. The exceptions, and the facts of the case, are stated in the opinion of the court.

*C. P. Robinson*, for the plaintiff, in support of the motion. I. Towns are liable for injuries resulting from defects outside the line of the highway, but near the same, and in the general direction of the line of travel. *Coggswell* v. *Lexington*, 4 Cush. 307 ; *Hayden* v. *Attleborough*, 7 Gray, 338 ; *Palmer et al* v. *Andover*, 2 Cush. 600 ; *Currier* v. *Lowell*, 16 Pick. 170 ; *Davis* v. *Hill*, 41 N. H. 329 ; *Sparhawk* v. *Salem*, 1 Allen, 30.

II. A town is bound to fence in a dangerous spot immediately contiguous to a highway in a compact part of a city or village, more particularly when the dangerous spot invites the traveller to enter it, from its similarity to the true highway. *Taylor* v. *Peckham*, 8 R. I. 352.

*Edwin Aldrich*, for the defendant, *contra*. I. The steep declivity where the accident occurred being from fifty to one hundred and fifty feet from the highway (Blackstone Street), along which plaintiff says she was travelling, was not so immediately contiguous to said highway as to render same unsafe for travellers along said highway with teams, carts, or carriages, and did not constitute a defect or want of repair for which the town would be liable. *Hayden* v. *Attleborough*, 7 Gray, 338 ; *Sparhawk* v. *City of Salem*, 1 Allen, 30 ; *Taylor* v. *Peckham*, 8 R. I. 351. Towns are not liable unless the defects are within the limits of the general course and direction of the travel along their highways. *Coggswell* v. *Lexington*, 4 Cush. 307 ; *Shepardson* v. *Colerain*, 13 Met. 61. Towns are not liable for defects outside the wrought and publicly travelled path, even within the limits of the highway. *Howard* v. *North Bridgewater*, 16 Pick. 190 ; *Smith* v. *Wendell*, 7 Cush. 498 ; *Kellogg* v. *Northampton*, 4 Gray, 69 ; 8 Ibid. 504.

II. Towns are not liable except for defects in their highways for which they could be indicted. Rev. Stat. ch. 44, §§ 13, 14 ;

*Howard* v. *North Bridgewater,* 16 Pick. 189 ; *Frost* v. *Portland,* 11 Maine, 271.   The defect where the accident occurred was a defect in a private passway, for which the town could not be indicted.

III.  If the town had no right or power to fence up this passway, it is not answerable for the consequences which follow from the want of a fence.   *Jones* v. *Waltham,* 4 Cush. 299.

BRAYTON, C. J.   The plaintiff was travelling in her carriage in the night-time along a public street in the town of Cumberland, called Blackstone Street, and had reached a point thereon near a bridge, by which the street crossed over the railway and over a deep cut therein.   The deep cut extended a long distance from the bridge and beyond the place of the injury complained of.   At the point which the plaintiff had reached there was a private way leading off to the right from the street, nearly at right angles thereto, and extended to a school-house, and along by it to another highway beyond.   The private way, some fifty to one hundred feet from the street, led along near and in dangerous proximity to the deep cut in the railroad.   This way had existed in the same place, and travellers had passed safely there, long before the construction of the railway.   There was some fence on the line of the street next the bridge, and extending toward the private way some ten or twelve feet.   At a considerable distance beyond the bridge there was another, a public way, leading off also to the right, nearly at right angles with the street.

On arriving at the point near the bridge she turned off into the private way, supposing it to be the public way beyond the bridge, which she had intended to take when she came to it. Leaving the street, she passed some fifty to one hundred feet safely, until she came in sight of the school-house, by which she discovered that she had mistaken the way and taken a wrong road ; and here, in attempting, without getting out of the carriage, to turn the horse round and to regain the street, she was precipitated into the railway cut and received the injury.   At this point the way was narrow and the carriage rut only a few feet from the bank, and turned gradually off from the railroad. The town put no railing or barrier along the way at this point, or indeed anywhere along the private way.   There was

evidence also that with the railing near the bridge of twelve feet in length, people might without warning drive into the cut next the bridge and contiguous to the street.

In this state of the evidence the plaintiff requested the court to instruct the jury that in such a compact portion of the town, it was the duty of the town to provide a railing or barrier to prevent travellers, exercising ordinary care, from driving off the highway into dangerous spots contiguous to it; and it is made a ground of exception that he did not give this instruction as to dangerous spots without the line of the wall but contiguous.

Were the dangerous spot where the injury was received not confessedly so far distant from the street that in no proper sense can it be said to be contiguous, this might furnish ground of exception. But the facts stated and allowed call for no such instruction. Another instruction asked was given, viz., that the town was bound to provide railing against such dangerous places within the highway. Another instruction asked, as stated in the fourth request named in the exceptions, was not given. It was: " If the jury believed that the direction of the turn at the passway (private way) and at the highway beyond the bridge near Edward Harris's were similar, and the town knew that the passway was dangerous, it was bound to fence up the passway." We do not think the judge should have instructed the jury in the general terms stated in this request. Towns are required to keep their highways in such condition that people exercising ordinary care, reasonably prudent men, may pass along them with their horses, teams, and carriages, with safety and convenience, and may with such care be enabled to keep within the line of the highway, without being in danger of falling off, or going off, without the limit of the highway, into danger that may be contiguous to it, as ponds, sloughs, cellars, or excavations, down precipices, against their will, when they would keep within the way as laid. The pit, or the cellar, or the excavation, outside the way, is not, properly speaking, a defect in the way. The defect in such case, if there be any, is that no provision is made in the construction or reparation to enable the traveller to avoid such danger by keeping in the way, in other words, to continue in the use of the way as a traveller thereon.

In *Hayden* v. *Attleborough*, 7 Gray, 338, a railing beside the

highway was necessary to prevent travellers from going off. There was no danger while he used the way. Shearman & Redfield on Negligence, § 391, say, where a rail is necessary for security of travellers, when otherwise unsafe, and maintaining it would prevent the injury, it is negligence not to construct and properly maintain it. *Collins* v. *Dorchester*, 6 Cush. 396, was cited to this point, that towns were not ordinarily bound to fence highways, but if necessary to safety at a place otherwise unsafe with ordinary care, a town is bound to maintain a railing.

So in *Alger* v. *Lowell*, 3 Allen, 402. The plaintiff was pushed by the crowd in the street upon a dangerous declivity *next the street*, where there was no fence to guard against the danger recurring in a crowded street. The street was liable to be crowded, and there was risk of passers by being thrown or falling into the dangerous place. In *Norris* v. *Litchfield*, 35 N. H. 271, a bridge had no railing to protect travellers from falling off into the stream. In *Chicago* v. *Gallagher*, 44 Ill. 295, the way led along a precipice having no guard to prevent falling down. Another case is that of *Ireland* v. *Oswego, &c. Turnpike Company*, 13 N. Y. 526. The company laid a new track, diverging somewhat from the old, near the place of the injury. The new track was safe, the old was dangerous. The wall was so left as to mislead a person of ordinary care. There was nothing to guide him so that he would keep the new track rather than the old and dangerous one, and to run upon the embankment left there, and the court held them bound to have something to turn the traveller from the unsafe track.

In *Palmer* v. *Andover*, 2 Cush. 600, there was a bank wall next a mill pond at the foot of a hill and at a turn in the wall to reach a bridge. There was no barrier upon this wall to prevent persons going straight forward from falling over the wall into the pond. This the traveller was liable to do, and the court held that it was the duty of the town to guard against this danger to the traveller in the use of the highway. He was in danger, while on the highway, of going off.

In *Sykes* v. *Paulet*, 43 Vt. 446, the plaintiff left the highway with his horse and wagon and went safely into a shed of a public house near. From this shed there was a descent to the river outside the highway, and when the plaintiff would return

to the highway his horse backed down the descent, where there was no railing to prevent it. The court said that the plaintiff must show the defect to be within the limit of the highway, and that the liability of the town never extended beyond the requirement to keep the way reasonably safe against such accidents as are likely to occur in *using* the highway for travel. A person travelling along the highway was in no danger from this descent. The condition of the highway neither forced the plaintiff there, nor led him to go there. He did not meet the accident in the use of the road, which he had voluntarily left.

In *Sparhawk* v. *Salem*, 1 Allen, 30, the highway called Bridge Street was safe. The land contiguous was safe and convenient. The defect alleged was that there was no fence on Bridge Street. The street adjoined land of a railroad company, and their station was forty feet from the line of the street; but at the end of their station was an embankment. The traveller passed off the street across this forty feet to the end of the station, and down the embankment, and was thereby injured. The judge declined to instruct the jury that there was no defect in Bridge Street, and it was held error not to have given them such instruction. And the court say that no case has been cited (and we may say the same here) which sanctions the doctrine that a railing is necessary to prevent travellers from straying out of the highway, when no unsafe place *is contiguous*, so as to make it dangerous to travel *in the way* itself next to it. That the private way which the plaintiff took left the street in the same direction and at the same angle with it as the public way which she designed to take, would not, in our judgment, add to the liability of the town, nor would the fact that in other respects the private way where it departs from the street resembled the public way beyond. It is not the duty of the town to point out private ways.

There is nothing in the street or in its construction that would lead to any mistake as to the way. The mistake is caused by the construction of the private way. He who makes such a way, makes it in such manner as he chooses. It is entirely separate and distinct and independent of the street.

Neither do we think that the knowledge that the private way is dangerous can add to the liabilities or the duty of the town.

Its dangers are not the dangers of the public way. Its defects are not the defects of the street. It does not affect the safety of the person who is travelling in the public way, and while he is travelling upon it. The town cannot stop the private way or prevent any person who will from travelling there, however dangerous it may be. If he will go there voluntarily, he goes at his own risk.

But the plaintiff confessedly, according to the statement of the exceptions, travelled from this street not less than fifty feet, and it may be one hundred and fifty feet, safely, before reaching the danger into which she fell, and quite as far as, nay, much farther than the plaintiff in the case of *Sparhawk* v. *Salem*, 1 Allen, 30. She voluntarily left this street, in pursuance of her purpose when she entered upon it, intending to use it no longer. From this time all duty of the town toward her ceased, and it became entirely immaterial to her whether the public street was safe or unsafe. There was no error in refusing the instruction here asked.

The plaintiff excepts to the charge as given to the jury in this, as stated in the exception, that a town is not bound to fence its highways, nor to provide against dangerous spots, barriers, or railings, except at such dangerous spots, stones, posts, or obstructions, as it has itself made and caused.

The first instruction, as to the duty of fencing, is not open to objection. There is no case that holds that towns are bound in duty to fence their highways. The last, that they are not bound to provide against dangerous spots, except such dangerous spots as the towns have themselves made and caused, does not express fully their duty. They are bound to provide against such as may have been caused by others or by the elements.

Had the evidence raised any question as to dangerous spots within the lines of the street, or without the lines but contiguous thereto, by which the plaintiff was injured, and whether they were caused by the town or by other persons, the direction might be material. But by the statement the injury was not caused by any dangerous place within or contiguous to the street, and the failure of the judge to state the whole duty of the town in this respect could not have affected the verdict, and had the whole been stated the verdict must have been the same.

*New trial denied.*