## MARY E. REDDINGTON *vs.* WALDO I. GETCHELL.

### JULY 5, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

*(1)  Direction of Verdict.*

A verdict should not be directed for a defendant if on any reasonable view of the testimony a plaintiff can recover.

*(2)  Direction of Verdict.   Preponderance of Evidence.   New Trial. Credibility of Witnesses.*

The question as to the credibility of witnesses is in the first instance for the jury and not for the judge presiding; nor is the justice warranted in directing a verdict in accordance with what he thinks is the preponderance of the evidence.   Upon motion for new trial made by a party who is dissatisfied with the verdict, a justice who presided at the trial is justified in considering, and it is his duty to consider, the credibility of witnesses, and what, in his view, is the preponderance of the evidence; if he believes the verdict to be unjust he should set it aside and grant a new trial; he should not, however, direct a verdict upon such grounds, but only upon the ground that there is no legal evidence which would justify a contrary verdict.

*(3)  Credibility of Witnesses.*

Under our constitution and law, when the testimony is conflicting the questions of the credibility of witnesses and the preponderance of evidence must in the first instance be determined by a jury, as also they must be finally determined by a jury.

*(4)  Negligence.   Invitation.   Ways.*

In a negligence action there was evidence from which it might be found that a way known as "Bangor Street" was laid out over defendant's land.   Across the easterly portion of the way a gully extended beyond the line of the way and on other land of defendant.   The way was laid out as an ordinary public street, with a sidewalk slightly raised above the surface of the roadway and with a paved gutter of regulation width. The roadway had a hard, even surface except for the gully, which had existed for about a week or two before the accident; on a post at the corner of the way there was a street sign of the ordinary character. The way had remained in the same general condition for about six years and was generally regarded as a public highway, and had been constantly used day and night by persons desiring to pass between a public highway and a parkway and to sections north of the parkway.   No notice had ever been given by the owner that it was a private way or that free passage was not permitted.

*Held,* that the evidence presented proper issues for the jury as to the extent of the permission or the invitation given by defendant and his predecessor in title for the public use of the way, and defendant having

been the owner of the premises for more than a year before the accident must be held to know of the public use of the way by day and night, and if such evidence was believed by the jury it might be found that the owner knew that the condition in which he maintained the way created the natural belief in the public that it was invited to use it and an implied invitation to continue to use it in the manner in which it had been used.

(5) *Invitation. Ways.*

If the owner of land by invitation, express or implied, induces a person to come upon it and cross over it, he must use ordinary care to keep that part of it to which such person is invited safe for passage.

(6) *Invitation. Ways. Parks.*

Where an ordinance of a city provided that a parkway should be open to the public only between sunrise and sunset, whatever may have been the status of a person while he was in the parkway between sunset and sunrise, the duty of an owner of land would remain unchanged to use reasonable care for the safety of a person whom he had expressly invited after sunset and before sunrise to pass out of the parkway onto a way running across his land or across such way into the parkway.

(7) *Ways. Invitation.*

An implied invitation to cross over premises may be as broad and unrestricted as any which might be expressed, if from the circumstances it appears to be unlimited.

(8) *Ways. Invitation. Questions for Jury.*

The extent of an invitation to use a way and the limitation of such invitation by the owner are questions for the jury.

(9) *Ordinances. Parks. Invitation.*

An ordinance of a city provided that a parkway should be open to the public only between sunrise and sunset, and in an action to recover for death of intestate caused by the wrongful act of defendant in negligently permitting a gully to remain across a way running through his land, which way he had invited the public to use, a verdict was directed for defendant on the ground that the ordinance rendered the passing through the parkway between sunset and sunrise illegal, and therefore there could be no implied invitation on the part of defendant to travel over that part of the way.

The way in question extended from a public highway to a street known as "Rosebank Avenue."

*Held,* that if such street was a public highway running through the park the ground on which the motion to direct was granted had no foundation in fact, and if the street was not a public highway but a part of the parkway, from the facts which the jury might find, it could not be said as a matter of law that any implied invitation of defendant for the public use of the way was limited by the terms of the ordinance.

TRESPASS ON THE CASE FOR NEGLIGENCE. Heard on exceptions of plaintiff and sustained as to exception to direction of verdict.

SWEETLAND, J.   This is an action brought under the statute to recover damages for the death of the plaintiff's son, Joseph Reddington, which death is alleged to have been caused by the wrongful act of the defendant.

The case was tried before a justice of the Superior Court sitting with a jury.  At the conclusion of the evidence said justice directed a verdict in favor of the defendant.  The case is before us upon exception to said action of the justice and upon exceptions to certain rulings of the justice made in the course of said trial.

It appears that the plaintiff's son, Joseph Reddington, was on and before the early morning of September 30, 1913, the driver of an automobile for hire in the city of Providence.  The plaintiff claims that there was a way, known as "Bangor street," laid out over the defendant's land in said city; and that the defendant for a long time previous to said September 30, 1913, had invited the public to use said way.  The alleged wrongful act of the defendant consisted in negligently permitting a gully or deep depression to remain across the easterly portion of said way, which gully extended beyond the line of said way and on other land of the defendant.  The existence of said gully was unknown to Joseph Reddington.  While said Joseph was driving along said way, or across land of the defendant to the east of and near said way, shortly after midnight on September 30, 1913, the wheels of his automobile went into said gully, said automobile was overturned and he was killed.  It appears that said way known as Bangor street was fifty feet in width.  At the southerly end it intercepted but did not cross Chalkstone avenue, a public highway of the city of Providence; from Chalkstone avenue it ran northerly for about two hundred and fifty feet to the north line of the defendant's land and thence was continued as Rosebank avenue.  In the trial of said case and in the argument before us Rosebank avenue has been spoken of as part of a public park

of the city of Providence known as the Pleasant Valley Parkway. From such evidence as was introduced in the Superior Court and certified to us it appears that said Rosebank avenue for a considerable distance beyond the northerly line of the defendant's land was a highway of the city of Providence. Said Rosebank avenue from its southerly end, at the north line of the defendant's land, proceeds upon a curve toward the northwest and then westerly in a straight line to River avenue, a highway of the city of Providence. There are other highways of said city which run into Rosebank avenue from the north. Just before the occurrence which caused his death Joseph Reddington with five passengers in his automobile drove said automobile from the village of Centredale through some highway and came upon Rosebank avenue, intending to go to Chalkstone avenue, and proceeded around said curve in Rosebank avenue toward Bangor street. Said accident occurred just after the automobile came upon the land of the defendant. The defendant claims that while on said curve Joseph Reddington left the roadway and drove upon the land of the defendant to the east of the way. The plaintiff claims that Joseph Reddington came upon the land of the defendant within the roadway of Bangor street and that said automobile was overturned by reason of its wheels going into said gully on Bangor street. The ordinance of the city of Providence with reference to " Parks " was introduced in evidence. Section 1 of Chapter 410 of the Ordinances of 1909, now Sec. 7, Chap. 40, of the Ordinances of 1914, is as follows: " Sec. 7. That portion of the Pleasant Valley Park and Parkway, which extends from Oakland avenue to Academy avenue, shall be open to the public only from sunrise until sunset each day."

Said justice, in directing a verdict in favor of the defendant, said: " I will grant the motion on two grounds; the ground that the ordinance rendered the passing

through the parkway between sunset and sunrise illegal
and therefore there can be no implied invitation on the
part of the defendant to travel over that part of Bangor
street. Also on the ground of contributory negligence of
the plaintiff in driving his automobile out of the traveled
part of the highway on to the sidewalk."

(1)   We have frequently held that a verdict should not be
directed for a defendant if on any reasonable view of the
testimony the plaintiff can recover. *Baynes* v. *Billings,*
30 R. I. 53. After an examination of the evidence we are
of the opinion that said justice was not warranted in
directing a verdict upon the second ground stated by him.
There was testimony upon which the jury might find that
at the time the wheels of the automobile first went into
said gully Joseph Reddington was driving his automobile
in the traveled part of Bangor street and not on the side-
walk thereof or on land east of the sidewalk. No witness
except two of the women who were passengers in the auto-
mobile testifies that he was present at the time of the acci-
dent. Certain witnesses for the defendant, who examined
the ground near said gully after the accident, testified
that they saw wheel tracks to the east of the roadway,
which wheel tracks they inferred were made by said
automobile. From this testimony and from the position
of the automobile in the gully after the accident an in-
ference might be drawn that just before the accident the
automobile was being driven outside the traveled part of
Bangor street. Apparently, in the opinion of said jus-
tice, these circumstances produced a preponderance of
the evidence in favor of the defendant upon that issue.
Witnesses for the plaintiff, however, testified to their ex-
amination of the place shortly after the accident and state
that wheel tracks in the roadway which ran from the
north to the edge of the gully clearly appeared to them
to have been made by the automobile lying in the gully.
It was for the jury to say from the testimony whether

wheel tracks of the automobile were visible upon the ground, and to determine what inferences, if any, might properly be drawn from their existence and location. There was also before the jury the testimony of two witnesses who were in the car at the time of the accident, Rose Marner and Jennie Sief. These witnesses testified that the automobile was in the roadway at the time of the accident and that they could see the road extending ahead of them in front of the automobile. At the trial (2) the defendant attacked the testimony of Rose Marner on the ground that she had made statements, soon after the accident, which were inconsistent with testimony given by her at the trial. The defendant also criticised the testimony of Jennie Sief and claimed that her statements regarding the accident were exaggerated and unreliable. Apparently said justice did not place much value upon the testimony of either of these witnesses. The question, however, as to the credibility of witnesses is in the first instance for the jury and not for the judge presiding; nor is the justice warranted in directing a verdict in accordance with what he thinks is the preponderance of the evidence. Upon motion for a new trial made by a party who is dissatisfied with the verdict rendered by a jury, a justice who presided at the trial is justified in considering, and it is his duty to consider, the credibility of witnesses and what, in his view, is the preponderance of the evidence; if he believes the verdict to be unjust he should set it aside and grant a new trial; he should not, however, direct a verdict upon such grounds, but only upon the ground that there is no legal evidence which would justify a contrary verdict. Under our constitution and law when the testimony is conflicting the questions of the (3) credibility of witnesses and the preponderance of evidence must in the first instance be determined by a jury; as also they must be finally determined by a jury. *Carr* v. *American Locomotive Co.*, 31 R. I. 234.

We will now consider the first ground given by said justice for directing the verdict and also the claims of the defendant with reference to his duty in the premises. There was evidence from which it might properly be found that Bangor street was laid out in the same manner as an ordinary public street in that locality, with a sidewalk slightly raised above the surface of the roadway, retained by a curbing of edgestones, with a paved gutter (4) of regulation width; that its roadway had a hard even rolled surface, save that for a week or two before the accident said gully had extended into the roadway; that upon a post at the westerly corner of said street and Chalkstone avenue there was a sign of the same size as an ordinary street sign with the words " Bangor Street " painted thereon; that said street had remained in that same general condition for about six years previous to the accident; that it was generally regarded as a public highway by persons having occasion to use it; that it had been constantly used both by day and at night by persons desiring to pass back and forth from Chalkstone avenue to the Pleasant Valley Parkway and to sections of the city lying to the north of said parkway; that the defendant and his predecessor in title had never given notice to the public by signs or otherwise that Bangor street was a private way or that free passage over it was not permitted by the owners. The existence of some of these conditions testified to by the plaintiff's witnesses was denied by the defendant. The evidence presented proper issues to be submitted for the determination of the jury as to the extent of the permission or the invitation given by the defendant and his predecessor in title for the public use of said Bangor street. The defendant had been the owner of the premises for more than a year before the accident and he must be held to know of the public use which was being made of said street by day and at night. If the evidence presented by the plaintiff, which we have set forth

above, was believed by the jury, it may be found that the owner knew that the condition in which he maintained this way created the natural belief in the public that it was invited to use the way. From these circumstances there may be found an implied invitation from the defendant to the public to continue the use of Bangor street in the manner in which it had been used for six years at least (5) before the accident. If the owner of land by invitation, express or implied, induces a person to come upon his land and to cross over it he must use ordinary care to keep that part of the land, to which such person is invited, safe for the passage. *Sweeney* v. *Old Colony R. R. Co.,* 10 Allen, 368; *Holmes* v. *Drew,* 151 Mass. 578; *Furey* v. *N.Y.R. R. Co.,* 67 N. J. Law, 270; *Barry* v. *N. Y. R. R.Co.,* 92 N. Y. 289.

(6)    Said justice must have held as a matter of law that because, by the ordinances of Providence, the Pleasant Valley Parkway was open to the public only between sunrise and sunset any implied invitation of the defendant for the public use of Bangor street was limited to the same period. We do not agree with that conclusion of the justice. Whatever may have been the status of a person while he was in said parkway between sunset and sunrise, the duty of the defendant would remain unchanged to use reasonable care for the safety of a person whom he had expressly invited after sunset and before sunrise to pass out of said parkway onto Bangor street or to pass across Bangor street and into said parkway. An implied invitation may be as broad and unrestricted as any which might be expressed, if from the circumstances it appears to be unlimited. The invitation which the law might im- (7) ply in this case would arise because it was found that Bangor street had for years been maintained by its owners with the appearance of an open public highway at night as well as in the daytime; that the defendant knew that said way was being used at all hours by many persons who desired to pass across said parkway to the high-

(8) ways at ·the ·north of it; that the defendant from these circumstances and by. his acquiescence in such unlimited use led the public to believe that they were invited to so use it. If such conditions are found, and nothing is found in the conduct of the defendant to limit the invitation to be implied therefrom, a person who came upon said way in response to such implied invitation is in no different position from one who has been expressly invited by the defendant. The defendant claims both that the evidence offered by him and the circumstances shown to exist there rebut the implication of invitation and also if any implied invitation could be found it was clearly restricted to the hours when the parkway was open to the public. Such evidence raises issues which should have been submitted to the jury.

(9)    As the evidence stands before us, however, the ordinance of the city of Providence with regard to Pleasant Valley Parkway is immaterial. It appears that Bangor street did not extend from Chalkstone avenue to a drive of the Pleasant Valley Parkway but to Rosebank avenue, a public highway. The defendant introduced evidence which shows that in 1906 one Frederick E. Shaw entered into a contract with the city of Providence; one of the provisions of said contract was that said Shaw should cause to be conveyed to the city a certain strip of land shown on a plat annexed to said contract " for highway purposes; " that in compliance with said agreement on the part of said Shaw the Valley Company, a corporation of which said Shaw was president, did convey to the city of Providence said strip of land. One of the provisions of this deed with reference to said strip was as follows: " said strip is hereby conveyed for the especial purpose of being used and improved as a highway and for no other use or purpose whatever." Said deed was approved as correct in form and satisfactory by the assistant city solicitor of Providence and said deed was duly recorded. It appears by plats introduced in evidence that

said strip so conveyed to the city of Providence for a high-
way is that part of Rosebank avenue which extends from
the north line of Bangor street about seven hundred feet
to another portion of Rosebank avenue which runs into
River avenue, a public highway. This is the only evidence
with relation to Rosebank avenue which we find among
the papers certified to us. It does appear in the tran-
script of evidence that the defendant introduced and read
to the jury a resolution of the city council dedicating cer-
tain lands for park and parkway purposes and providing
for the care of Pleasant Valley Parkway and also intro-
duced certain plats showing the extent of Pleasant Val-
ley Parkway. By stipulation of counsel said resolution
and plats were withdrawn from the papers in the case
at the close of the trial. Whether the resolution and plats
so withdrawn throw light upon the present condition of
Rosebank avenue we do not know. If Rosebank avenue is
a public highway running through said park, the first
ground upon which said justice directed a verdict has no
foundation in fact. If said Rosebank avenue is not a pub-
lic highway but a part of said Pleasant Valley Parkway,
from the facts which the jury might find from the testi-
mony, it cannot be said as a matter of law that any im-
plied invitation of the defendant for the public use of
Bangor street was limited by the terms of the ordinances
of the city of Providence with reference to parks.

After examination we find no merit in any of the other
exceptions taken by the plaintiff. The plaintiff's excep-
tion to the direction of a verdict is sustained; her other
exceptions are overruled.

The case is remitted to the Superior Court for a new
trial.

*Tillinghast & Collins, Easton, Williams & Rosenfeld,
Charles R. Easton,* for plaintiff.

*Mumford, Huddy & Emerson, Charles C. Mumford,* for
defendant.