**Paul A. DiCENZO**

v.

**Anthony RUSCETTA et al.**

**No. 84–85–Appeal.**

Supreme Court of Rhode Island.

June 5, 1986.

Paul A. Anderson, Anderson, Anderson & Zangari, Providence, for plaintiff.

William H. Jestings, Providence, Armando O. Monaco, Cranston, Guy J. Wells, Gunning, LaFazia & Gnys, Inc., Joseph A. Kelly, Carroll, Kelly & Murphy, Thomas C. Angelone, Hodosh, Spinella & Angelone, Providence, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendant Anthony Ruscetta, treasurer of the city of Cranston (the city), from a judgment entered against the city in Superior Court. We reverse. The facts are as follows.

On April 18, 1979, plaintiff, Paul A. DiCenzo (DiCenzo), was looking for his son in the Grant Avenue area of Cranston. DiCenzo drove his motorcycle around and stopped to speak with Benjamin DeLillis (DeLillis), who told him that he had seen his son on Grant Avenue. It was approximately 7 p.m., and because of the darkness, visibility was limited. After talking with DeLillis, DiCenzo drove his motorcycle south on Grant Avenue, crossed over Farmington Avenue, and drove onto a paved portion of private property that appeared to be a roadway. He had entered at the northern end of the property and was driving approximately twenty to thirty miles per hour. After travelling the length of the property, approximately ninety feet, DiCenzo was severely injured at the southern end. He was found unconscious on a city road that abutted the property. It is impossible to reconstruct the facts surrounding the accident because DiCenzo had no recollection of the occurrence. He remembered talking with DeLillis but could not recall anything after that. The next thing he could remember was being in the hospi-

tal. The only eyewitness, DeLillis, testified that DiCenzo drove onto the paved area and then went over a railroad-tie retaining wall that was at the southern end of the property. Although he saw the motorcycle's taillight bounce, he lost sight of DiCenzo and did not see what happened after DiCenzo went over the wall.

The paved area of private property upon which DiCenzo travelled was owned by the abutting landowners who were named as codefendants. The landowners obtained title in 1973 when a city council abandonment resolution was passed pursuant to G.L. 1956 (1968 Reenactment) § 24-6-1.[1] Prior to the 1973 abandonment, the land was unimproved and untraversable owing to a sharp drop in elevation that created a pit. Sometime after gaining title, the owners of the abandoned land built a paved private way with a railroad-tie wall on the southern end. In addition the city placed a yellow sign on the northern end that read, "Not a Through Street."

On March 12, 1980, DiCenzo filed a complaint against the city and the abutting landowners. The jury found the city negligent but did not find the abutting landowners negligent. Total damages were set at $1,054,328, and the jury apportioned 85 percent of the responsibility on the city and 15 percent on DiCenzo. The verdict was reduced by the appropriate percentage of responsibility to $896,178.80. Pursuant to G.L. 1956 (1969 Reenactment) § 9-31-3, as amended by P.L. 1970, ch. 181, § 2, the Superior Court entered a judgment against the city for $50,000.[2]

DiCenzo filed a motion to alter or amend the judgment under Rule 59(e) of the Superior Court Rules of Civil Procedure, and the city filed a motion for new trial. Both motions were denied, and the parties appealed.

While on appeal, a bill entitled "An Act Relating to a Suit against the City of Cranston by Paul A. DiCenzo," number 84-S-0434 (the act), was passed by the Legislature. The act was aimed at permitting DiCenzo to recover the amount of the jury's verdict ($896,178) plus interest as of the date of the verdict, for a total judgment of $1,335,306.40. An order of remand was entered on July 26, 1984, pursuant to DiCenzo's motion, to reconsider the final judgment in light of the act.

1. General Laws 1956 (1968 Reenactment) § 24-6-1 provides:

"Order of abandonment—Reversion of title—Notice.—Whenever, by the judgment of the town council of any town, a highway or driftway in said town, or any part of either, has ceased to be useful to the public the town council of said town is authorized so to declare it by an order or decree which shall be final and conclusive; and thereupon the title of the land upon which such highway or driftway or part thereof existed shall revert to its owner, and the town shall be no longer liable to repair the same; provided, however, that the said town council shall cause a sign to be placed at each end of such highway or driftway, having thereon the words 'Not a public highway,' and after the entry of the said order or decree shall also cause a notice thereof to be published in a newspaper of general circulation, printed in English published in the county in which said land lies at least once each week for three (3) successive weeks or if there be no such newspaper published in the county in which the land lies, then in such newspaper published in Providence county, and a further and personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned who is known to reside within this state but nothing herein contained shall in any manner affect any private right-of-way over the land so adjudged to be useless as a highway or driftway, if such right had been acquired before the taking of such land for a highway or driftway."

2. General Laws 1956 (1969 Reenactment) § 9-31-3, as amended by P.L. 1970, ch. 181, § 2 provides:

"Limitation of damages—Cities and towns.—In any tort action against any city or town any damages recovered therein shall not exceed the sum of fifty thousand ($50,000.00) dollars; provided however, that in all instances in which said city or town was engaged in a proprietary function in the commission of such tort, the limitation of damages set forth in this section shall not apply."

Section 9-31-3 now provides a $100,000 limit. G.L. 1956 (1985 Reenactment) § 9-31-3.

On remand, a judgment was entered in the sum of $896,178 together with interest, the judgment not to exceed $1,335,306.40. The city appealed this judgment.

■ The city has advanced several arguments, including a challenge to the act. However, we need only consider two issues: (1) whether the city owed a duty to DiCenzo with respect to the condition of the private way and (2) the question of what effect, if any, posting a "Not a Through Street" sign instead of a "Not a Public Way" sign had on the city's liability.

DiCenzo's action was based on the city's alleged negligent maintenance of the paved area on which he was injured. Two statutes, §§ 24–5–1 and 24–5–13[3] apply to this type of claim. To recover against the city, DiCenzo would have been required to show that these statutory provisions applied and that the city's violation thereof caused the injuries. Such violation of the statutory duty could constitute negligence.

In order to prove negligence, the plaintiff must establish, *inter alia*, that the defendant owed him a duty of care. *Ryan v. Department of Transportation*, 420 A.2d 841, 843 (R.I. 1980); *Montuori v. Narragansett Electric Co.*, 418 A.2d 5, 9 (R.I. 1980). Section 24–5–1 imposes a duty on municipalities to maintain their highways in a safe condition for travelers. DiCenzo attempted to use § 24–5–1 to show that the city owed him a duty. However, no duty arises under § 24–5–1 if the area is privately owned.

In *Chapman v. Cook*, 10 R.I. 304 (1872), the plaintiff sued a town for an injury received on a private way. The facts in that case were as follows. The plaintiff was travelling along a public road. It was nighttime, and the plaintiff made a right turn onto a private way that she believed was a public street. The private way led to another public highway and passed a schoolhouse. The plaintiff travelled approximately fifty to a hundred feet on the private way when she discovered that she had made a wrong turn. As she tried to turn around, she was thrown from her carriage when the carriage fell into a deep rut that was adjacent to the private way. The town had not put a fence beside the private way, nor had it taken steps to keep travellers from turning off the public way onto the private way.

The court held that the town was not liable for the plaintiff's injuries. Stressing that the accident occurred at least fifty feet from the public street, the court held that the town owed no duty to the plaintiff for injuries suffered upon a private way when the accident and hazard were not on or contiguous to the public street. *Id.* at 307, 310. The court stated:

"Towns are required to keep their highways in such condition that people exercising ordinary care, reasonably prudent men, may pass along them with their horses, teams, and carriages, with safety and convenience and may with such care be enabled to keep within the line of the highway, without being in danger of falling off, or going off, without the limit of the highway, into danger that may be contiguous to it, as ponds, sloughs, cellars, or excavations, down precipices, against their will, when they would keep within the way as laid. The pit, or the

---

**3.** Section 24–5–1 provides:

"Duty of town to maintain highways.—All highways, causeways, and bridges, except as is hereinafter provided, lying and being within the bounds of any town, shall be kept in repair and amended, from time to time, so that the same may be safe and convenient for travelers with their teams, carts and carriages at all seasons of the year, at the proper charge and expense of such town, under the care and direction of the town council of such town.

In addition, the surfaces of all such highways and causeways shall be maintained in such a state of repair as to make them safe for bicycles."

Section 24–5–13 provides:

"Liability of towns for injuries from defective roads.—Such towns shall also be liable to all persons who may in any wise suffer injury to their persons or property by reason of any such neglect, to be recovered in an action of the case."

cellar, or the excavation, outside the way, is not, properly speaking, a defect in the way." *Id.* at 307.

Concluding that the town's duty ceased when the plaintiff left the public way, the court also held that the town was not under a duty to point out that the way was private nor was the town under a duty to warn travellers of the dangers in the private way or to protect them from such dangers. *Id.* at 309–10. The court stated, however, that the owners of the private way might be liable. *Id.* at 309; *see also Reddington v. Getchell,* 40 R.I. 463, 101 A. 123 (1917) (landowner who allowed the public to use his property as if a public way and maintained it so that it appeared to be a public way has a duty to travellers to keep the way free of unreasonable defects).

Section 24–5–13 imposes liability on towns for injuries resulting from negligent maintenance. Basically, negligent failure to maintain town roads, as required by § 24–5–1, results in liability under § 24–5–13. However, a plaintiff cannot recover under § 24–5–13 unless he or she first proves that the way was a public street. This requirement has been an essential element under our statutes providing recovery for injuries that are due to defects in town roads. *E.g., Blair v. Granger,* 24 R.I. 17, 19–21, 51 A. 1042, 1043 (1902); *Chapman,* 10 R.I. at 309; *see also Cole v. Barber,* 33 R.I. 414, 418, 82 A. 129, 131 (1912).

In the instant case, the land was a "paper street" prior to 1973. It was unimproved and untraversable because of a sharp drop that ended in a pit at one end. Because of the condition of the land, the city council, as authorized by § 24–6–1, abandoned it in 1973. There has been no challenge to the abandonment. Under § 24–6–1, once the land was abandoned, title vested in the abutting landowners, and the town was no longer liable for repairing the area.

In view of the foregoing principles, we hold that DiCenzo was not entitled to recover from the city because he failed to show that the city owed him a duty to maintain the area on which he was injured. Because the area was not a city street, §§ 24–5–1 and 25–5–13 had no application. DiCenzo was injured on private property, not on a city street or on an area contiguous thereto. Therefore, the city was not liable.

■ Finally, DiCenzo claims that the city is liable because it posted a "Not a Through Street" sign instead of a "Not a Public Way" sign as required by § 24–6–1. We find this argument to be unpersuasive. The purpose of posting a "Not a Public Way" sign is to notify the public that the property is private, not public. To this end, it benefits the abutting landowners. The required sign was not intended to convey any warning. The words "Not a Public Way" do not warn of danger, but rather notify the public that the apparent roadway is private in order to discourage public trespassing thereon. Such a sign is not required to protect the safety of travellers. A sign bearing the words "Not a Through Street," although not relevant to the purpose of § 24–6–1, tends to advise a traveller that the roadway may only be traversed in part. Such a sign probably has more effect as a hazard warning than the "Not a Public Way" sign. However, the city was under no duty to warn of any potential hazard that might be located on private property. *Chapman* 10 R.I. at 309–10. The city's only duty is to protect travellers from harm upon or within a public way or in an area immediately contiguous thereto. *Id.* Consequently, it was erroneous as a matter of law to submit the question to the jury about whether the failure to post a "Not a Public Way" sign might constitute negligence. On the facts of this case, it was error not to grant the city's motion for a directed verdict.

In light of this determination, it is unnecessary to reach the issue of damages, including the effect thereon of the act passed by the General Assembly after the initial judgment on the case had been rendered.

For the reasons stated, the defendant city's appeal is sustained. The judgment of

the Superior Court is reversed, and the papers in the case are remanded with directions to enter judgment for the defendant city.