[1] Dean M. Huff, Jr., is automatically substituted for David Okun as Treasurer of the Town of Barrington without formal order pursuant to Super. R.Civ.P. 25(d).
 DECISION
This is an action for a declaratory judgment pursuant to G.L. 1956(1997 Reenactment) § 9-30-1, et seq., as amended, (Uniform Declaratory Judgments Act). The parties have submitted the case for decision on written memoranda. None of the facts are in dispute.
The plaintiff is a Rhode Island general partnership, which developed a cluster development of sixteen detached single-family homes in the defendant Town of Barrington. The development was constructed under a Cluster Development Agreement (hereinafter simply "the Agreement"), dated November 30, 1988, between the parties, executed pursuant to the Town's zoning ordinance and by-laws.
The issue in this case is: Who is required to pay for the water provided for fire protection through hydrants installed in the streets of the development? The Bristol County Water Authority (hereinafter simply "the Water Authority") has billed the plaintiff for private hydrant fire service in accordance with its Rules and Regulations. The Water Authority is not a party to this litigation and its interpretation of its regulations is not before the Court. In any event, the plaintiff has paid the charges, obviously in the interest of the safety of the condominium units, but it has made demand upon the defendant to reimburse it for its payments to the Water Authority and to assume the burden of further payments.
All of the streets within the development, according to paragraph 8 of the Agreement, are private streets. The plaintiff is charged with all aspects of the maintenance of these streets and their infrastructure. The streets are, however, subject to what appears to be a perpetual and irrevocable easement on behalf of the public to pass and repass, apparently to the same extent as if the streets were public ways. It would appear that by not accepting the streets as public streets the Town avoids the burden of maintenance of the streets and so escapes any liability under G.L. 1956 (1997 Reenactment) § 24-5-1, et seq. See DiCenzo v.Ruscetta, 510 A.2d 417, 420 (R.I. 1986); Chapman v. Cook, 10 R.I. 304
(1872).
Under paragraph 6 of the Agreement, the plaintiff is required to "provide the Town with written confirmation of its arrangements forwater, gas, electricity, and telephone from the respective utilities providing such service." (Emphasis supplied.) Water service is supplied to the development by the Water Authority. Each of the owners of the sixteen residential units presumably is metered and separately billed for their respective consumption of water for household purposes and the plaintiff is billed for the hydrant rental.
The plaintiff contends that the Town's liability arises from its obligations in paragraph 9 of the Agreement:
 "Municipal Services. The Town shall provide the residents of the Development with all municipal services customarily provided to all residents of the Town such as garbage removal, police, fire, rescue, emergency and other such services which are not expressly undertaken by the Developer or Association pursuant to the terms of this Agreement. The Town is hereby granted a perpetual license to enter any area of the Development for the foregoing purposes."
It is the plaintiff's position that providing water for fire protection is among the "municipal services customarily provided to all residents of the Town." The defendant counters that the hydrants in the private streets are part of the "infrastructure" of those streets, like the paving, curbing, storm drains and storm drain detention basins in the streets, for which the plaintiff is specifically responsible under the Agreement. Furthermore, it argues, since the plaintiff is plainly responsible for the provision of water service under paragraph 6 of the Agreement, that water service is one which is "expressly undertaken by the Developer or Association (the plaintiff) pursuant to the terms of [the] Agreement," and so it is not an obligation of the Town under paragraph 9.
In sum, the defendant contends, first, that, if the Water Authority's charges are rentals for the hydrants themselves, then those hydrants are part of the infrastructure of the private streets and the rental charge is part of the cost of construction and maintenance of the streets, themselves. In the second place, if the rental charge is, in fact, really a charge for the water to be used for fire-fighting, then it is a utility service. In either case, the plaintiff is obligated by the contract between the parties to bear the cost either of the hydrants or the water service.
The plaintiff points out that fire hydrant rental should not be construed to be its obligation because in an agreement with another cluster developer, referred to as "Lion's Head," with substantially similar provisions to those in the Agreement, which is the subject of this litigation, the Town, and not the developer, pays the hydrant rentals. Accordingly, it says that under the Agreement the fire hydrants are "municipal services customarily provided to all residents of the Town." It contends that it and one other development are the only single-family residential development which are required to pay for fire fighting water through a street hydrant system.
The Agreement makes no express reference to the fire hydrants. It does refer to water, and the inference is inescapable that the plaintiff was obligated to arrange for water service in the development. It refers to the streets and to their infrastructure, the construction and maintenance of which is, if not plainly, at least clearly inferably that of the plaintiff.
The Court finds that it was the intent of the parties that paragraph 9 of the Agreement was intended to limit the obligation of the Town to provide only the barest minimum of municipal services to the development. That provision was never intended to be enlarged by liberal construction. The maintaining of fire hydrants is not sufficiently like the services described as municipal services in that paragraph to be included in "other such services," without despoiling the word "such." The whole sense of that paragraph is to define with particularity and precision the limited obligation of the Town. The exclusion of reference to fire hydrants precludes their inclusion in a catch-all provision. The fact that another agreement with another party with substantially similar language may be implemented differently does not satisfy the Court that this Agreement must be construed to conform to the implementation of the other agreement.
Moreover, the defendant points to a change in circumstances which explains the different treatment of the Lion's Head development. Although the Lion's Head cluster development agreement provided that its streets were to be private ways, after the agreement was executed they were dedicated to the Town. The record is silent as to whether the Town has accepted that dedication, but the Town argues that it "now owns the streets in the Lion's Head cluster development." It would scarcely permit its counsel to make that argument unless there exists record evidence to substantiate that claim. See G.L. 1956 (1997 Reenactment) § 24-2-8.
Nevertheless, even if the defendant is mistaken as to the ownership of the streets in the Lion's Head development, its conduct with regard to that development depends upon its belief that there was a substantial difference in the circumstances of the respective developments.
Under all the circumstances, this Court concludes that the Town is not contractually bound by the Agreement to pay for the rental of the fire hydrants installed on the plaintiff's private streets.
Finally, the plaintiff argues that the execution of the Agreement by the Town was a governmental act. The Town was exercising governmental powers delegated to it by the State pursuant to G.L. 1956, §§ 45-24-1thru 45-24-26, as then in effect. The Agreement was executed pursuant to Section 4-11A of the Town's zoning ordinance, effective October 14, 1986. The plaintiff points out that the Town concedes that, "Other than the residents of Mallard Cove and Glendale Acres (the plaintiff)" no other "owners of real estate in the Town of Barrington . . . pay for fire hydrant rental." Answer to Plaintiff's Interrogatory Number 10 by RonaldD. Tarro, Treasurer of the Town of Barrington, May 13, 1996.
The plaintiff urges that by denying it the benefit of payment for the fire hydrants the Town administration is depriving it of equal protection of the law as prohibited by Section 1 of the XIVth Amendment to the Constitution of the United States and Section 2 of Article I of the Constitution of the State of Rhode Island. The two constitutional provisions have been held to be so similar that the same analysis may be applied to claims of violation of either or both of them. See Rhode IslandDepositors Economic Corporation v. Brown, 695 A.2d 95, 100-01 (R.I. 1995) cert. den. sub nom. Ernst Young v. Rhode Island Depositors EconomicCorporation, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995).
Equal protection of the laws generally proscribes governmental action which treats one class of people less favorably than others similarly situated. Perrotti v. Solomon, 657 A.2d 1045, 1049 (R.I. 1995) (citingYick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). An equal protection violation may be established by showing that an impermissible classification has occurred. Ibid., (citing Felice v. RhodeIsland Board of Election, 781 F. Supp. 100, 105 (D.R.I. 1991)).
In the analysis of a statutory classification our Supreme Court has held:
 "It is well established that where it has not been shown that a `fundamental right' has been affected or that the legislation sets up a `suspect classification,' a statute will be invalidated on equal protection grounds only if the classification established bears no reasonable relationship to the public health, safety, or welfare. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Similarly, where the challenged statute is not a capricious exercise of the lawmaking power, there is no violation of the Rhode Island Constitution, article I, § 2, which is essentially a guarantee of equal protection of the laws. Gomes v. Bristol Mfg. Corp., 95 R.I. 126, 184 A.2d 787
(1962); Doherty v. Town Council, 61 R.I. 248, 200 A. 964 (1938)." Sweetman v. Town of Cumberland, 117 R.I. 134, 151 (1976).
Although in this case the plaintiff does not claim that any statute or ordinance deprives it of equal protection, it does allege that the policy of denying it the benefit of payment by the Town of the fire hydrant rentals, which it accords generally to all other residents of the Town, is an impermissible classification.
The plaintiff does not allege, nor could it, that the classification involves any right which has been held to be fundamental. Accordingly, so long as there is any rational basis for the Town's distinction between the plaintiff and all the other residents of the Town, who enjoy Town-paid hydrant rentals, the equal protection clauses of both constitutions are not offended. City of Pawtucket v. Sundlun, 662 A.2d 40, 60 (R.I. 1995).
The defendant points out, first, that the Town pays the rental for hydrants installed on public streets in the Town. The plaintiff's streets are private streets, subject to a public easement of right of way. While an argument could be made that this is a difference which in reality does not make any difference, nevertheless, under the standard of minimal scrutiny it cannot be said that the distinction is so irrational, arbitrary and capricious, as to defy rationality. This Court may not agree with the policy decision of the Town Administration, but equal protection analysis does not permit it to substitute its judgment for the governmental policy-makers, where there is any rational basis for the municipal policy. In the second place, the Town contends that by agreeing to pay the rental fees, in its contract with the Town, the plaintiff has voluntarily waived its constitutional right to equal protection. There is, however, no evidence that at the time it executed the Agreement the plaintiff knew that it would be obligated to pay the hydrant rental.
The plaintiff asks that the Court regard the hydrant rental charges as a form of taxation. It argues that it is required to pay the service provider, the Water Authority, for a service, for which the Town pays on behalf of all other residents. The plaintiff's residents are taxed, they say, at the same rate as other residential owners, who receive the benefit of hydrants as a Town service paid for by a portion of their taxes. For the same benefits the plaintiff's residents pay the hydrant rental fees in addition to their real property taxes. While it is true as a general proposition that constitutionally and by law disproportionate taxation of real estate is illegal in Rhode Island, Merlino v. TaxAssessors for the Town of North Providence, 114 R.I. 630, 639 (1975), absolute equality in taxation is beyond human possibility. Allen v.Bonded Municipal Corp., 62 R.I. 101, 105, reorg. den. 62 R.I. 153
(1939).
Furthermore, it could not be held that tax-payers are entitled to equal benefits from tax collectors. Many tax-payers are required to pay for service from private providers, which may be extended without charge to other recipients of the same services from a municipal government. All that is required to satisfy equal protection, where fundamental rights or suspect classifications are not involved, is that the classification survive minimal scrutiny. This Court concludes that the plaintiff has not been denied equal protection of the law under either constitution.
Based on all of the foregoing, judgment will enter for the defendant denying and dismissing the plaintiff's claims for relief.