JAMES A. DOHERTY *et al. vs.* TOWN COUNCIL OF THE TOWN OF SOUTH KINGSTOWN.

SAME *vs.* ZONING BOARD OF REVIEW OF THE TOWN OF SOUTH KINGSTOWN.

JULY 8, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These are two petitions for writs of *Certiorari* heard together by agreement of the parties and with the consent of the court. Case M. P. No. 676 is brought to review the proceedings of the town council of the town of South Kingstown in connection with the passage of an amendment to the zoning ordinance for that town. Case M. P. No. 677 is brought to review the decision of August 6, 1937 by the zoning board of review of the town of South Kingstown, sustaining the action of the building inspector of that town in issuing a building permit to one Letitia K. Waters. The writs have issued and the records in both cases are before this court.

The town council is also the zoning board of review. The proceedings which the petitioners now question took place approximately during the same period of time but on different days, so that there is no confusion as to the capacity in which the respondent was acting in either of these cases. The two cases are separate and distinct from each other. Furthermore, our decision in M. P. No. 677, which raises the real issue between these parties, may dispose of both cases. In the circumstances, therefore, we will first direct our attention to that case and will consider M. P. No. 676 only in case it becomes necessary.

The petitioners' appeal from the ruling of the building inspector granting a building permit to Letitia A. Waters without certain restrictions was fully heard by the town

council of the town of South ,Kingstown, sitting as a zoning board of review, which we will hereafter call "the board", on July 8, 20, 27, 29, 1937. The petitioners and Letitia K. Waters were represented by counsel at these hearings. The transcript of three hundred seventy-two pages before us shows that the board permitted both sides to introduce testimony with great liberality, without resort to strict rules of evidence. They apparently knew that further proceedings might follow their decision and therefore allowed a complete stenographic record to be made, so that the contentions of the parties and the action of the board in reference thereto might clearly appear in any such proceedings.

The record shows that the petitioners own a house on lot 36 ón "plat of Matunuck Point, . . . 1925." The deed to that lot, dated June 17, 1927, contains a number of restrictions, the only ones pertinent in the instant case being the following: "1. Only one one-family residence . . . shall be erected on any one of the residence lots herein above described. . . . 4. The dwelling to be erected on each plot shall be placed back at least twenty-five (25) feet as an irreducible minimum from the front line of plot, piazza included, and at least seven and one-half (7½) feet from the side lines of each adjoining plot, and at least ten (10) feet from any side or rear street line . . . ." Letitia K. Waters and her husband, Frank G. Waters, were the owners of lots 33, 34 and 35 on the same plat, by deeds dated August 20, 1926, the two deeds to such lots containing the same restrictions just quoted. It would appear from the evidence that all the deeds conveying lots on this plat were subject to the same restrictions.

It is clear from the evidence that the plat above mentioned comprises what was formerly the Little Comfort Farm, which embraced the whole of Matunuck Point, a tract of land extending northerly from its southerly boundary on the Atlantic Ocean into a body of water, with many coves, creeks, channels and inlets, which is commonly known local-

ly as "Potter's Ponds" and is so designated in the ordinance under consideration. Segars Cove and Beach House Cove are included in "Potter's Ponds." A narrow neck of land, bounded on the south by the Atlantic Ocean and on the north by Beach House Cove, connects Matunuck Beach on the west with Matunuck Point on the east. The ocean shore of the former is a sandy beach, while that of the latter is rocky.

The maps in evidence, especially petitioners exhibit 7 upon which they strongly rely, show that Matunuck Point is bounded on the west by the coves just mentioned and on the north and east by "Potter Pond." Petitioners' exhibit 7 is a "Compiled Map", prepared for the purposes of the hearing before the zoning board by Fred V. Waterman, a civil engineer, who testified for the petitioners at great length from this map. It shows all the lands and inland waters in the town of South Kingstown to the east of the districts or section commonly known as Matunuck Beach as far as the town line, some fourteen miles or more away from that district or section. According to petitioners' exhibit 7 "Potter Pond" has two channels in its southeastern portion, a southern and a northerly channel, which, after winding about independently of each other for some distance, finally converge into a common and tortuous watercourse running to the division line between the towns of South Kingstown and Narragansett. This watercourse then flows into Point Judith Pond, which runs into the Atlantic Ocean. It is to be observed that at the town line the common channel just mentioned is some distance north of the Atlantic Ocean.

The entire section of South Kingstown, commonly known as Matunuck Beach, is to the west of Matunuck Point. Petitioners' exhibit 7, as well as all the other maps in evidence, show that with the exception of the narrow neck of land above mentioned connecting this section with Matunuck Point, it is bounded on the east by Segars Cove and Beach House Cove. It is an older development and far more dense-

ly populated, especially by summer residents, than Matunuck Point. Buildings of all kinds were erected in this section.

In the words of petitioners' principal witness, who had considerable to do with the preparation and proposal of the building ordinance, the resulting conditions in that district were that "in certain areas there were two or three houses being put up on one lot; there were also several fires in that district which caused loss of property, and the beach was becoming more popular, more people were coming down, and it appeared that something should be done to keep that condition away from the beach." This witness and a few others, as members of or in cooperation with the town relations committee of the Matunuck Beach Improvement Association, were instrumental in drafting and proposing the building ordinance in the form that it was adopted by the town council, after a public hearing which was attended by the residents of Matunuck Beach but by very few, if any, residents of Matunuck Point.

This witness further testified that in drafting the zoning ordinance and the building regulations connected therewith, "the main talk was in reference to the regulations; there was very little consideration given to the boundaries . . . We never discussed them as boundaries, as such, that's true." When asked why the eastern boundary in the zoning ordinance was put in as "Potter's Ponds", his answer was: "I really don't know."

The particular parts of the zoning ordinance and building regulations in question, passed June 8, 1931, are as follows: "Section 1. Section 12 of the Building Code is hereby amended to read as follows: 'Zone D That part of the Town of South Kingstown known as *Matunuck Beach* and bounded on the North by the Northern boundary of the Matunuck Park Plat, on the East by *Potter's Ponds,* so called, on the South by the Atlantic Ocean and on the West by the Matunuck Drift Road.' (italics ours) . . . Section 3. The Build-

ing Code is hereby further amended by adding . . . : Section 26. In Zone D the following regulations shall apply: (A) Open Space. In Zone D for every building erected for residence use, there shall be open space on the lot equal to at least 40% of the area of the lot. (B) Front Yard. In D every such building shall have a front yard not less than 10 feet in depth along its principal street frontage and not less than 5 feet in depth along every other street frontage. (C) Side Yard. In Zone D every such building shall have a side yard along each lot line other than a street line or a rear line. The width of the side yard shall be not less than 5 feet for any such building two stories or less in height and not less than 8 feet for any such building more than two stories in height. (D) Rear Yard. In Zone D every such building shall have a rear yard having a depth of not less than 25 feet."

Omitting many details which have no material bearing on the question before us, the record shows that in May 1937, Letitia K. Waters started excavating a foundation for a house on lot 35, which lies immediately east of petitioners' lot 36. There is considerable conflict between the parties whether Mrs. Waters' house, which, according to the pictures in evidence, was actually boarded in when the petitioners' appeal was heard by the board, was a building two stories high or more than two stories high. Under the zoning ordinance and the building regulations above quoted which apply to Matunuck Point, this matter need not be considered further.

It appears in evidence that upon discovering that Mrs. Waters' house was being erected seven feet eight inches from petitioners' easterly lot line instead of eight feet, as called for by the ordinance for a two and one-half story building, which the petitioners claimed it was, James A. Doherty complained orally to the building inspector of this alleged violation of the building regulations in zone D, and then, on May 28, 1937, both petitioners followed it with a formal

letter of protest from their attorneys. On June 1, the building inspector, answering this letter, stated that the Waters' property was not in zone D. The attorney replied by letter of June 3, reaffirming his original claim and requesting that the building permit issued to Mrs. Waters be revoked because it was in violation of the ordinance. The final answer of the building inspector is found in his letter of June 7 to the attorney. In this letter, after stating that he has conferred with the town council and the building committee thereof, he writes: "It is the final decision of the Committee that Zone D is bounded on the east by the westerly shore of Beach House Cove, so called, this cove being a part of Potter's Ponds; thence in a southerly line to the Atlantic Ocean. It is therefore necessary for me to rule that the land known as Matunuck Point Plat is not included in Zone D of the Building Ordinance of the Town of South Kingstown, adopted June 8, 1931." From this ruling the petitioners appealed to the zoning board of review, whose decision we are now asked to review.

The controversy in this case involves the construction of the language of the ordinance describing zone D as "That part of the Town of South Kingstown *known as Matunuck Beach* and bounded on the North by the Northern boundary of Matunuck Park Plat, on the East by Potter's Ponds, so called." (italics ours) It may be noted here that the Matunuck Park Plat was a duly recorded plat in the land records of the town of South Kingstown, and that the Matunuck Point Plat was also so recorded at the time that the ordinance was enacted. There can be no question that the town council intended to zone a particular section of land and not water, and it is reasonable to assume that in enacting the ordinance they had in mind these recorded plats, as well as the names by which divers sections of the town were commonly and locally known.

The petitioners claim that the land of Mrs. Waters, as well as their own, is in zone D and that her building vio-

lates the regulations of such zone, in this, that it has a rear yard of less than twenty-five feet and a side yard of less than eight feet. Mrs. Waters, on the other hand, claims that her land is not in zone D, and that, even if it were, there is no violation of the ordinance in view of the size of the building and the peculiar contour of her lot.

There is a good deal of conflicting testimony as to whether Potter's Ponds is a body of fresh water or of navigable tide-water. The petitioners, contending that it is fresh water, argue that as the ordinance bounds zone D "on the east *by* Potter's Ponds", the true boundary line of that zone on the east is the thread of Potter's Ponds, following that thread through its many windings to the town line between the towns of South Kingstown and Narragansett. (italics ours) The respondent contends that as the north boundary of zone D is clearly defined and determined in the ordinance, the east boundary of that zone, both in reason and by construction, is the westerly shore of Potter's Ponds, and that this is especially so since Potter's Ponds is navigable tide-water.

Expert testimony from civil engineers was introduced by both sides in support of their respective contentions. We will now consider this testimony as briefly as possible. It is to be noted at the start that zone D is "bounded on the North by the Northern boundary of the Matunuck Park Plat." The east end of this north boundary line on land is on the westerly shore of Segars Cove. This terminus is designated for convenience as point A in the testimony. Starting with point A, the expert for the petitioners and those for the respondent are in serious conflict in the interpretation of the east boundary of zone D as described in the ordinance.

Many maps are in evidence, but we will confine ourselves to the "compiled Map" by Frederick V. Waterman, petitioners' exhibit 7 before the zoning board, unless otherwise indicated. It appears on this map, drawn to a scale of

1/10,000 that the westerly shore of Segars Cove and Beach House Cove extends southerly towards the Atlantic Ocean for almost the entire distance of what the respondent contends is the east boundary of zone D, but that it does not in fact connect with the ocean on the south because of the narrow neck of land, which, as we have already stated, joins Matunuck Beach with Matunuck Point, so-called. To the east of these coves we find on the map the words "Potter Pond". This witness, Waterman, who was the only expert produced by the petitioners, interprets the east boundary line of zone D described in the ordinance as following the thread of Potters Pond. He therefore projects the northerly boundary line of Matunuck Park Plat east from point A on Segars Cove to an imaginary line which he considers the thread of Potter Pond, and then follows that thread from two points on the latter line through two winding courses, a southern and a northern course, until they unite in a common course to the town line, which, according to the map, is about fourteen and one-half miles east from point A. We shall hereafter refer to the southern course as course 1; to the northern course as course 2; and to the common course, as course 3.

With a boundary line definitely fixed, the ordinance bounds zone D "on the East by Potters Ponds, so called, on the South by the Atlantic Ocean." It stands to reason that starting from point A in the north line, the boundary line on the east, unless otherwise clearly specified, must necesssarily run in a generally southerly direction. We have followed and measured the east boundary line as described by the petitioners' expert with the following approximate results. From point A to the town line by courses 1 and 3, the east boundary of zone D, as interpreted by the petitioners' expert, Waterman, would "meander" east, south, east, southeasterly, northeasterly, southeasterly, northwesterly, northeasterly, southeasterly, northeasterly and east for approximately nineteen miles. Without going into details,

a similar situation is presented if we follow this east boundary line from point A through courses 2 and 3 to the town line. This line measures eighteen miles more or less. Outside of whatever buildings may have been erected on Matunuck Point, we find no evidence in the record of the nature of the land or the character of the buildings that would be included within the east boundary as delineated by the petitioners' expert.

The consensus of opinion of the four experts for the respondent is that zone D is bounded on the east by the westerly shore of Segars Cove and Beach House Cove; in other words, by the westerly shore of "Potter's Ponds, so called", interpreting that name as a general geographical designation for all the connecting bodies of water, however otherwise denominated, to the east of that shore line. Three of these experts complete this east boundary of zone D across the narrow neck of land that separates Matunuck Beach from Matunuck Point by running a line due south, from where the shore line of Beach House Cove turns east, to the Atlantic Ocean. The fourth expert completes this east boundary across the neck of land just mentioned by starting with a stone bound at the southwest corner of Beach House Cove and following a series of such bounds which extend southerly to the Atlantic Ocean. These bounds, according to this witness, have been there for over sixty years and formerly marked the boundary line between Matunuck Beach and Little Comfort Farm, now Matunuck Point.

There is no question but that the east boundary of zone D is not clearly described in the ordinance and, therefore, open to interpretation. While it is true that the legislative intent is to be found primarily in the language of a statute or ordinance, yet where the language is ambiguous or uncertain, the court, or other body acting in a judicial capacity, may take into consideration certain extrinsic matters which tend to throw some light on the legislative intent. The ob-

ject to be accomplished, the condition of the country to be affected by the statute or ordinance, the remedy provided and the consequences following upon its enactment are all proper matters for consideration as a guide to the legislative intent. See *Blais* v. *Franklin,* 31 R. I. 95, at pages 106 and 107.

Let us apply these general principles to the circumstances in the instant case. The testimony is clear that, for years before the ordinance in question was enacted, the permanent inhabitants of this part of the town of South Kingstown drew a sharp distinction between the section known as Matunuck Beach and the adjoining section on the east thereof, formerly the Little Comfort Farm and now known as Matunuck Point, irrespective of how some summer residents may have used the name "Matunuck Beach" in more recent years. Zone D of the ordinance relates to "That part of the Town of South Kingstown known as *Matunuck Beach.*" (italics ours) It is reasonable to infer that the town council, which is composed of permanent and not of summer residents, intended to include in zone D that part of the town which was known to them as Matunuck Beach.

This inference is strongly supported by the fact that this ordinance was enacted at the instance of the Matunuck Beach Improvement Association. It is clear that the improvement association was interested in remedying certain undesirable conditions resulting from the previously mentioned unregulated development of Matunuck Beach. It is also significant that at the public hearing prior to the enactment of the ordinance, those present at the hearing were almost all residents of Matunuck Beach.

We can presume that the members of the town council, in discharging their public duty as councilmen, were reasonably cognizant of the manner in which Matunuck Point was being developed and that they had knowledge of the restrictions in the recorded deeds to platted land in that section of the town. It, therefore, appears to us improbable that

they intended to include in zone D a section of the town that was already restricted by the covenants in such deeds, especially since there was no demand for further regulations from that section, and still more improbable that they intended to adopt building regulations in connection with a zoning ordinance which would seriously conflict with the building restrictions in those deeds. A comparison of the building regulations of zone D with the building restrictions in the recorded deeds of both the petitioners and Letitia K. Waters, which we have above set forth, will show this conflict.

Another consideration which throws some light upon the intention of the town council as to the territory which they intended to include in zone D is that, from the adoption of the ordinance on June 8, 1931, to the time when these petitioners made their written protest to the building inspector in the instant case on May 28, 1937, the building regulations of that zone were never treated as applying to buildings on Matunuck Point. As far as the record before us shows, all such buildings were erected in accordance with the restrictions in the deeds to land on the Matunuck Point Plat, which embraces the whole of Matunuck Point, and not in conformity with the building regulations of zone D. While this practice may not be a long-continued practice in the strict sense of that term, yet it was a uniform and continuous practice over a substantial period, and as such is entitled to whatever consideration it merits in the light of all the other surrounding circumstances.

There is still another consideration to be taken into account by us in arriving at the meaning of the language used in the ordinance by the town council when they described zone D as bounded on the east by "Potter's Ponds". If we take the petitioners' interpretation of that language and follow the thread of Potter Pond on petitioners' exhibit 7 to the town line, thereby disregarding the fact that zone D is intended to apply only to the section "known as

Matunuck Beach," we find that it would include zone D land between fourteen and nineteen miles from Matunuck Beach, as to which there is no evidence of any need or request for regulation.

The petitioners in urging their contention place great stress upon the use of the word *by* in the phrase "bounded . . . on the East *by* Potter's Ponds." (italics ours) They argue that "Potter Pond", on their map, which they construe as the equivalent of "Potter's Ponds", in the ordinance, is a body of fresh water and that a boundary on such a body of water ordinarily carries the boundary line to the thread of the stream or pond. But the controlling question in the instant case is what section of the town of South Kingstown is included by the ordinance in zone D, rather than the fixing of a particular boundary of that zone. If there is legal evidence upon which the town council reasonably could have acted in deciding that zone D included only that part of the town "known as Matunuck Beach", it is immaterial in these proceedings whether or not its east boundary was clearly defined in the ordinance, for Matunuck Point would not be within the limits of the section of South Kingstown which is identified in the ordinance by its common and local name, Matunuck Beach.

The power to enact zoning laws, as well as their nature, extent and lawful application, was fully considered by us in our recent opinion in *Robinson* v. *Town Council of Narragansett,* 60 R. I. 422. We have no power to consider the wisdom of a zoning law. The responsibility for the decision on its need and usefulness must rest with the body that had the power to enact it. But in case of doubt or ambiguity, we will construe such a law reasonably and in harmony with the legislative intent, as expressed in the ordinance.

In the instant case it is clear that the ordinance and the building regulations under consideration were designed with the sole object of correcting undesirable conditions, including danger from fires, at Matunuck Beach, which is bounded

on the east by the westerly shore of Segars Cove and Beach House Cove, or, in other words, by the westerly shore of "Potter's Ponds", using this comprehensive name, as the ordinance apparently does, to describe the entire body of water to the east of that westerly shore. As apparently no such conditions existed at Matunuck Point, there was no public need or request in that section for any regulation by ordinance. The ordinance and building regulations in question have a rational and substantial relation to the health, safety and general welfare of the Matunuck Beach community, but no such relation to Matunuck Point.

After due consideration, we are of the opinion that there was sufficient legal evidence to warrant the zoning board of review in finding that the ordinance establishing zone D applied only to the district or section of the town of South Kingstown commonly and locally "known as Matunuck Beach", and that it did not apply to Matunuck Point. In the circumstances of this case, it is unnecessary for us to consider the many authorities cited to us by the petitioners in reference to the fixing of a boundary line, as the petitioners are not within the district or section known as Matunuck Beach.

The petitioners further contend that to construe the ordinance as not including Matunuck Point would render it discriminatory, and in violation of art. 1, sec. 2 of the constitution of Rhode Island, and of art. XIV, sec. 1 of the amendments to the constitution of the United States. We find no merit in this contention. The town council of the town of South Kingstown concluded that the public welfare would be promoted by constituting that section of the town "known as Matunuck Beach" as a zone D district. If the petitioners may properly raise this question, the ordinance and regulations in connection therewith bear alike on all persons living within the same territory. On the record before us, we do not find that the adoption of such laws and regulations was a capricious and arbitrary exercise of the

lawmaking power.  See *Zahn* v. *Board of Public Works,* 274 U. S. 325.

For the reasons above stated, we find no error in the record before us in M. P. No. 677.  In the circumstances, it becomes unnecessary for us to consider M. P. No. 676, as the subsequent amendment of the ordinance by the town council in no way prejudiced these petitioners.  The writ of *certiorari* in each case is quashed, and the records in both cases certified to us are ordered to be returned.

*Philip S. Knauer, Philip S. Knauer, Jr., Knauer & Fowler,* for petitioners.

*James O. Watts,* for respondent Waters.

*Thomas H. Gardiner,* Town Solicitor, for respondents.