232 A.2d 775.

JOSEPH P. NUNES *et al. vs.* TOWN OF BRISTOL *et al.*
GILBERT FERREIRA *et ux. vs.* SAME.

AUGUST 18, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

730

KELLEHER, J. These civil actions[1] were brought to en-

[1]Although these were bills in equity, certification was begun after the January 10, 1966 effective date of the new rules of civil procedure of the superior court. We have therefore used the terminology of the new rules.

join the construction by the town of Bristol of an addition to one of its fire stations. We treat these actions as having been certified to us as an agreed statement of facts pursuant to G. L. 1956, §9-24-25, as amended. In doing so, we think it appropriate to comment on the hybrid method chosen by the parties to bring these actions before us. In these cases a decree was entered on February 15, 1966, which includes fifteen separate findings of fact, a statement that the "cause is ready for a final decree" and four questions propounded for our determination. The use of findings of fact and the four questions make it dubious as to whether these actions have been certified on an agreed statement of facts pursuant to §9-24-25, as amended, or as questions of importance pursuant to §9-24-27, as amended. It is clear that each section is different from the other. Section 9-24-25, which calls for the statement of facts, provides that a final judgment based on our decision will be entered by the superior court. Section 9-24-27 contains no such provision but merely states that proceedings in the superior court will be stayed pending our decision on the questions certified to us. Since this certification appears to have been initiated by the parties on the filing of an agreed statement of facts, it should be noted also that neither party filed in the superior court a motion for certification as is required by the provisions of rule 72(a) of the rules of civil procedure of the superior court. In deference to orderly procedure, it behooves all parties when they invoke our assistance pursuant to a certification statute to adhere with care to the established procedures incidental thereto. By failing to do so, they run the risk of an improper certification which we, quite properly, will not answer. Since we have before us in the instant cases an issue of extreme public interest involving the public safety of one of our municipalities, we shall overlook the unorthodox manner in which our aid is sought. Our action here, however, is taken without any intention of setting a precedent for the future.

The record discloses that sometime prior to August 17, 1961, the town of Bristol purchased a new addition to its fire-fighting equipment described in the record as a "snorkel fire truck." Because this particular apparatus is designed especially for the extinguishing of fires or the rescuing of people in the upper portions of tall buildings, it is of unusual design. The snorkel on this truck is a large boom at the end of which is a basket wherein stands the firefighter. With the aid of a hydraulic system this boom can be raised to great heights. In order to house the snorkel truck, it was planned to build an addition to the Dreadnaught fire station which stands at the southwesterly corner of High and Church streets.

When several of plaintiffs learned of the size and the proposed location of the addition, they initiated litigation which has succeeded in keeping the town in court and the fire truck out of the station for the past six years.

Building plans show that the addition would abut the property of one of plaintiffs and come within two feet of two of the remaining plaintiffs. The Bristol zoning ordinance, which is an exhibit here, shows that in 1961 a fire station was a permitted use in this area of the town. It is clear, however, that the proposed structure violated the area or set-back requirements of the ordinance.

Faced with this dilemma, the town council president applied to the zoning board for relief. The board granted the application but certain of plaintiffs appealed this action to us. In *Nunes v. Zoning Board of Review,* 93 R. I. 483, 176 A.2d 721, the town, for reasons which are not apparent in the record, conceded that the board's decision was a nullity. Because of this concession, this court on January 12, 1962, held that there was no further justiciable controversy between the parties and the decision of the board was quashed.

Later the controversy arose again because the town council amended the zoning ordinance by providing that the

town, or any agency thereof, would be exempt from the provisions thereof whenever it sought to erect a use or a building for public or municipal purposes.[2] The town also secured a building permit and commenced construction on the addition. Subsequently plaintiffs instituted suit and further construction was enjoined. When the causes were reached for trial, the superior court certified the following four questions:

"1. Is the Town of Bristol acting in a govermental [sic] capacity to erect an addition to an existing fire station exempt from the provisions of the zoning ordinance of the Town of Bristol.

"2. Does the Town of Bristol under the State Enabling Act (Title 45-24-1 through 20) or otherwise have the power by specific terms or otherwise to exempt itself from the operation of its zoning ordinance.

"3. If the Town of Bristol does have the power to exempt itself from the operation of its zoning ordinance, does this constitute an unlawful delegation of power by the legislature.

"4. If it is found that the Town of Bristol does not have the power to exempt itself then:

a. Does this use of land satisfy the requirements for a special exception as set forth in Section C (2) of the 1961 Zoning Ordinance of the Town of Bristol.

b. Does this use of land satisfy the requirements for a variance as set forth in Section C (3) of the 1961 Zoning Ordinance of the Town of Bristol"

We answer the first question in the negative; the second in the affirmative; the third in the negative. Because of our replies to the earlier inquiries, there is no need to reply to the fourth question.

[2]"Section 1. 'Article I, Section 2' of said Zoning Ordinance of the Town of Bristol is amended so as to add the following language after the last sentence thereof:

" 'Notwithstanding any provision of this ordinance, structures, buildings and land may be erected or used by the Town of Bristol, or any agency or department thereof, for public or municipal purposes in any Zoning District, and said structures, buildings and land so erected or used shall be exempt from the provisions of this Ordinance.' "

## I

It needs no citation of authority to hold that a municipality when engaged in the construction or expansion of a fire station, is performing in a governmental capacity. We have so ruled in *Buckhout* v. *City of Newport*, 68 R. I. 280, 27 A.2d 317.

In Rhode Island a municipality may or may not choose to enact a zoning ordinance. The extent of the authority of the great majority of cities and towns in this state in promulgating such legislation is prescribed in the pertinent provisions of the enabling act, chap. 24 of title 45, G. L. 1956. Bristol is one such municipality. We have examined the provisions of the enabling act and can find no provision which exempts, ipso facto, a municipality from any zoning ordinance which may be enacted pursuant to its terms. Had the general assembly desired that the cities and towns of this state automatically be exempt from their own zoning laws, it would have so provided. Its failure to do so, in our opinion, is significant. Indeed, we believe that a declaration by us to the effect that a municipality is by its nature beyond the provisions of its own ordinance would be an unwarranted and unjustifiable intrusion upon a legislative prerogative. If the legislature wishes to exempt the cities and towns from their own zoning regulations, it may do so. Since they have not done so as yet, we will not arrogate to ourselves this purely legislative function.

Our answer to the first question therefore is "no."

## II

Our reply to the second question submitted to us is, as one will see, a qualified yes. It is based upon a considerate study of the enabling act and an examination of the general principles of law pertinent to the issue formulated here. The power and the extent thereof which will permit a municipality in this state to exempt itself from the pro-

visions of its own zoning ordinance must be found within the provisions of the enabling act.

An analysis of the enabling act discloses that there is no provision in this legislation which expressly permits a local legislative body to exempt a municipality from zoning restrictions. Consequently, any such power must be found in an implied grant from the general assembly to each of the local governmental units which see fit to enact a zoning ordinance.

In *Cianciarulo* v. *Tarro*, 92 R. I. 352, 168 A.2d 719, we discussed at length the authority delegated to a local legislature by the enabling act. There we said that by §45-24-1 thereof gave the city or town council power to regulate and restrict the uses of land. We also stated there and in *Hadley* v. *Harold Realty Co.*, 97 R. I. 403, 198 A.2d 149, that §45-24-3 of the act set forth the objectives which hopefully would be achieved by the exercise of the conferred zoning power. From the language of the section it was clear, we said, that the general assembly had incorporated therein norms and guidelines which a local council could look to when it invoked this delegated authority. We declared in *Cianciarulo* that the provisions of §45-24-3[3] were not mandatory but were directory only with a broad discretion as to the manner in which such ends shall be accomplished. In this same opinion we discussed the interrelationship be-

---

[3]"45-24-3. General purposes of ordinances.—Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote the public health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such town or municipality."

tween §45-24-3 and §45-24-5—the latter being the provisions which authorize the amendment of a zoning ordinance. We concluded that §45-24-3 limited the council's power to amend only to the extent that any change effected by such amendment must be in conformity with a comprehensive plan. In *Hadley* we described a comprehensive plan as a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety and welfare of the public.

In *Hadley, supra,* we established the criterion to be used to determine whether or not an amendment to the zoning ordinance violates the comprehensive plan. There we held that if the enactment of the amendment bears such a reasonable relationship to the public health, safety and welfare so as to justify its adoption, the comprehensive plan remains inviolate. With this standard in mind, it is our belief that any city or town in this state may legally amend its zoning ordinance by adopting a *properly* drawn ordinance which exempts from its operation any building or use employed by a municipality in the performance of its governmental functions. Likewise a provision in an original zoning ordinance embracing a similar exemption is valid.

We point out, however, that the authority to exempt a municipality is applicable exclusively to those situations in which it operates in governmental as distinguished from a proprietary capacity. The distinction drawn between the mandatory and necessary governmental functions as opposed to the proprietary functions performed by a city or town have been recognized and emphasized as being an important determinative factor by various courts and noted

authorities when they have addressed themselves to the issue now before us.[4]

In this jurisdiction we recognize the distinction between the governmental functions of a city and town and its proprietary functions. *Buckhout* v. *Newport, supra.* In the exercise of the first, the municipality acts as the agent of the state performing duties delegated to it by the sovereign. Whereas in the exercise of its proprietary functions, a city or town has the same full measure of authority over its property that a private corporation or individuals enjoy. *City of Providence* v. *Hall,* 49 R. I. 230, 142 A. 156. We can perceive no reason why a city or town in the performance of its proprietary capacity, like any other individual or corporation, should not be bound by a zoning ordinance.

Having enunciated the above rule, we shall examine the Bristol amendment to determine if the town council has properly exempted the town from the restrictions of its zoning ordinance. The issue is whether or not the phrase "public or municipal purposes" as used in the ordinance properly limits the circumstances in which the town is freed from the strictures of its zoning regulations to those occasions when it acts in a governmental, as distinguished from a proprietary, capacity.

In making a finding in this regard, we apply the rules of statutory construction with equal force in interpreting this ordinance as we do when we have a statute before us for our analysis and determination. We are guided in our consideration by the principle set forth in *Novak* v. *City Council of Pawtucket,* 99 R. I. 41, 205 A.2d 589, where we stated

---

[4]See: *Stiger* v. *Village of Hewlett Bay Park,* 283 App. Div. 827, 129 N.Y.S.2d 38; *Nehrbas* v. *Incorporated Village of Lloyd Harbor,* 2 N.Y.2d 190, 159 N.Y.S.2d 145; 2 Metzenbaum (2d ed.), Law of Zoning, ch. X-i-1, pp. 1283-1285; 2 Yokley (3d ed.), Zoning Law and Practice, ch. XX1, §21-2, p. 469; 2 Rathkopf (3d ed.), Law of Zoning & Planning, ch. 53, pp. 1-10. See also annotation on this subject, 61 A.L.R.2d 970, and the cases cited therein and in the later case service.

that this court, if reasonably possible, will construe an ordinance to avoid its invalidity. Whenever the language of an ordinance is susceptible of more than one interpretation, we will adopt the interpretation that will best carry out its evident purpose. *Taft* v. *Zoning Board of Review*, 75 R. I. 117, 64 A.2d 200. In *Doherty* v. *Town Council*, 61 R. I. 248, 200 A. 964, we pointed out that though the legislative intent is to be found primarily in the language of an ordinance yet where the language is ambiguous or uncertain the court may take into consideration certain extrinsic matters which tend to throw some light on the legislative intent. We stated in *Doherty* that among matters which could properly be considered as giving an indication of the legislative intent was the objective to be accomplished by the enactment of the ordinance.

It is generally agreed that the words "public or municipal purposes" standing alone are not susceptible of any precise and neat definition but in each case they must be considered in the context in which they are used. *State ex rel. McClure* v. *Hagerman*, 155 Ohio St. 320, 98 N.E.2d 835, 37 Am. Jur., Municipal Corporations, §120, p. 734. While it is conceivable that in certain circumstances the phrase "public or municipal purposes" could be used to describe a proprietary function of a city or town, it does not appear that the town council of Bristol intended that such a meaning be ascribed to this language.

Having in mind the principles of statutory construction to which we have referred earlier, it is obvious that the council enacted the ordinance which contains the amendment for the specific purpose of permitting the addition to be made to the existing fire station. We believe that the phrase "public or municipal purposes" as used in the ordinance is synonymous with the term public purposes and was employed by the council to include only those well recognized governmental functions performed by the town

in the interest of all the public. It refers to a governmental or public purpose as opposed to a private or proprietary one.

We hold therefore that the phrase "public or municipal purposes," as used in the Bristol amendment, encompasses only those functions which a municipality may perform in a governmental capacity. Accordingly the amendment under study here effectively exempts the town of Bristol from any restriction contained in its zoning ordinance.

In considering the third question certified to us by the superior court, we are not required to indulge in any lengthy discourse or give any extensive citation of authority to hold, as we do here, that a provision in a zoning ordinance which specifically exempts therefrom the governmental functions of a municipality is not an improper delegation of authority by the legislature for the reasons which appear heretofore in this opinion.

While our opinion herein renders moot the inquiries posed to us by question four, we would be remiss if we did not point out that any reply whatsoever to the queries contained in the question would be completely beyond the proper realm of the certification statutes. Whether the use of land satisfies the requirements for a special exception or variance under the Bristol ordinance is a matter to be decided in the first instance by the zoning board of review of the town and only after it has heard evidence in support thereof. Although we will review the board's decision, our action in this regard is initiated by the filing in this court of a petition for a writ of certiorari pursuant to the provisions of §45-24-20. This court will not stand idly by and allow the statutory certification procedures to be used to bypass established avenues of review which have been delineated for us by the general assembly.

The papers in both cases with our decision endorsed thereon are returned to the superior court for further proceedings.

Motion for leave to reargue denied.

*Hugo L. Ricci,* (Attorney for Joseph P. Nunes et al.), *Helen M. MacGregor,* (Attorney for Gilbert Ferreira et ux.), for plaintiffs.

*Anthony R. Berretto, Ralph C. DeLuca,* for defendants.