DECISION
This is an appeal from a decision of the Town of Narragansett Zoning and Platting Board of Review (Board). The plaintiffs, Mark and Erica Decof (Decof), are appealing the Board's decision issued on October 8, 1998 granting both a special use permit and dimensional variances to co-defendants, Robert and Gloria DiLeonardo (DiLeonardo), and William and Geraldine Garrahan (Garrahan). Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The facts before the Court are as follows. The DiLeonardos entered into a purchase and sales agreement with the Garrahans to purchase the Garrahans' undeveloped property on Sea Spray Way in Narragansett, Rhode Island. The property is an 86,408 square foot parcel designated as Lot 26 B-2 on Assessor's Plat F. Lot 26 B-2 is located in an R-80 zoning district that is subject to certain minimum requirements pursuant to § 6.4 of the Narragansett Town Code (Code). The parcel is also located in a coastal resources overlay district. As a result, development of the property is subject to further limitations under § 4 of the Code that requires the DiLeonardos to obtain a special use permit prior to any construction. Special use permits are granted pursuant to the standards found in § 12.5 of the Code.
Under § 6.4 of the Code, property located in an R-80 zoning district is subject to several minimum requirements for single family dwellings. For instance, each lot must be 80,000 square feet in size and 200 feet in width. Section 6.4 also sets the maximum height for any structure in an R-80 zoning district at 30 feet. See Narragansett Code § 6.4.
Section 4.4 of the Code allows for special use permits for property located in coastal resources overlay districts. Any development under § 4.4 is subject to certain building restrictions including: that no structure is to be constructed any closer than 200 feet to the shoreline; that a 200' undisturbed buffer land ward of the shoreline feature must be maintained; and that all grading, filling, and land disturbance must be set back 100 feet from the edge of the shoreline feature.See Narragansett Code § 4.4. Section 12.5 of the Code sets forth the standards for obtaining a special use permit and allows for dimensional variances from the setback requirements of § 4.4.
Due to the restrictions associated with Lot 26 B-2 found in both § 4.4 and § 6.4, the DiLeonardos submitted their construction plan for review and approval to the Board.[1] The DiLeonardos proposed to build a two floor, flat roof house that is 130 feet long and 55 to 60 feet wide. The structure would also extend 36 feet in height from the lowest grade to the rooftop. The house would contain an individual sewage disposal system (ISDS) located on the portion of the lot furthest away from the ocean. The current plan would require the house to be constructed 98 feet from the shoreline, and it would disturb the required natural undisturbed buffer by 150 feet. Also, grading and filling would disturb the shoreline feature 50 feet from the construction. Because their plan deviates from the zoning restrictions, the DiLeonardos required a 110 foot dimensional variance from the structure setback, a 150 foot variance from the 200 foot buffer setback, and a 50 foot variance from the 100 foot disturbed area setback for grading and filling. The DiLeonardos also required a separate six foot dimensional variance from the 30 foot maximum height requirement.[2]
On November 15, 1997, the DiLeonardos applied to the Board for a special use permit seeking to build in a coastal resources overlay district under § 4.4(2) and dimensional variances from the various height and setback requirements under § 4.4(3) and § 6.4. The Board conducted a public hearing on the DiLeonardos application and heard testimony from several experts. After considering the testimony, the Board issued its written decision on October 8, 1998 and granted the special use permit and the dimensional variances subject to certain specific restrictions.[3] Plaintiffs timely appealed the Board's decision to this Court pursuant to G.L. 1956 § 45-24-69.
 Standard of Review
This Court's review of the Narragansett Zoning and Platting Board's decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 "(1) In violation of constitutional, statutory, or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991)(citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 Matters Considered on Review
The DiLeonardos argue that issues raised by the Decofs in their memorandum were not properly raised before the Board. The Court finds that this argument lacks merit. The error of law by the Board is clear from the face of the record, and the issues raised are properly before this Court. The issue before the Board was whether it should grant the special use permit and the dimensional variances the DiLeonardos sought. The same issue is now on appeal before this Court. The Decofs complaint clearly states that "the original Decision and Amended Decision Letter of the Board granting DiLeonardo/Garrahan's applications for variances and a special use permit be reversed and that DiLeonardo/Garrahan be required to comply with all provisions of the Zoning Ordinance of the Town of Narragansett." See Complaint. While the Decofs may not have specifically argued to the Board that Newton v. Zoning Board of Review of the City of Warwick,713 A.2d 239 (R.I. 1998), prohibits the Board from granting the special use permit along with dimensional variances, the underlying legal issue before the Board, and now before this Court, is clear from the record. Therefore, the Court finds that the issues raised by plaintiffs in their memorandum are properly before this Court.
 Special Use Permits and Dimensional Variances
Under the Zoning Enabling Act, a zoning board of review may issue a special use permit pursuant to the provisions of a local zoning ordinance. G.L. 1956 § 45-24-42.[4] Section 12 of the Narragansett Code sets forth the standards for obtaining a special use permit in the Town of Narragansett. Specifically, § 12.5 states that the Board may grant a special use permit only upon finding the following:
 "(1) That the use will comply with all applicable requirements and development and performance standards set forth in Sections 4 and 7 of this ordinance; except that the board may grant a variance from dimensional setbacks incorporated in the development standards section 4.3.4 of the coastal and freshwater wetlands overlay district, and section 4.4.5 of the coastal resources overlay district, in accordance with the requirements of Section 11 of this ordinance;
 "(2) That the use will be in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the Town of Narragansett;
 "(3) That the granting of the special use permit will substantially serve the public convenience and welfare;
 "(4) That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare;
 "(5) That it will not substantially or permanently injure the appropriate use of surrounding property.
 "(6) In addition to the above, the zoning board of review shall consider:
 a. Access to air, light, views, and solar access.
 b. Public access to water bodies, rivers and streams.
 c. The conservation of energy and energy efficiency."
Narragansett Code § 12.5.
Furthermore, § 12.5 provides that "[t]he zoning board of review may not extend or enlarge a special use permit except by granting a new special use permit."
The Board also has the power to grant dimensional variances under G.L. 1956 § 45-24-31(61)(b) and § 2.2 of the Code. Section 2.2, which tracks the language of § 45-24-31(61)(b), defines a dimensional variance as
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Narragansett Code § 12.5.
Our Supreme Court has held that the language of §45-24-31(61)(b) unequivocally requires that a "dimensional variance be granted only in conjunction with the enjoyment of alegally beneficial use, not in conjunction with a use granted by special permit." Newton, 713 A.2d at 242 (emphasis in original.); See also Northeastern Corporation v. Zoning Board ofReview of New Shoreham, 534 A.2d 603 (R.I. 1987) (holding that a dimensional variance could not be granted in conjunction with a special use permit). Under Newton, therefore, the Board as a general rule does not have the authority to grant a special use permit in conjunction with a dimensional variance.
Special Use Permits and Dimensional Variances in CoastalResources Overlay Districts
The Town of Narragansett contains coastal resources overlay districts that encompass "areas of the town where natural physical limitations render the land unsuitable for development without restrictions." Narragansett Code § 4.1. Specifically, a coastal resources overlay district includes,
 "[S]horeline features including coastal beaches and dunes, barrier beaches, coastal cliffs, bluffs, and banks, rocky shores, and manmade shorelines; and . . . areas contiguous to shoreline features extending inland for two hundred (200) feet. . . . It is public policy of Rhode Island and the town to preserve, protect, develop, and restore coastal resources and their ecological systems in the interests of the public health, safety, and general welfare of the community."
Narragansett Code § 4.4.
In order to properly build on property designated as a coastal resources overlay district, the landowner must obtain a special use permit from the Board. Narragansett Code § 4.4. The requirements for a special use permit are set forth in § 4.4(b) which states, in pertinent part, that
 "The zoning board of review may grant a special use permit following site plan review and approval for the following activities in the coastal resources overlay district, provided the proposed project or activity complies with all applicable development standards and other requirements imposed by this ordinance and by the state coastal resources management council . . ."
Narragansett Code § 4.4.
Any development within the coastal resources overlay district must comply with certain developmental standards set forth in § 4.4(c). These standards include
 "(6) Any filling, grading, excavating, and other land alteration will be the minimum necessary to construct the proposed project; . . .
 "(8) All structures . . ., roads, individual sewage disposal systems, and underground utilities will be set back at least two hundred (200) feet from the edge of coastal salt ponds, tributaries to and wetlands associated with coastal salt ponds, and Type 1 and 2 . . .;
 "(9) Except for water-dependent activities and structures, all grading, filling, excavation, construction of buildings and roads, and installation of individual sewage disposal systems and underground utilities will be set back at least one hundred (100) feet from the inland edge of any shoreline feature abutting tidal waters."
Narragansett Code § 4.4.
In complying with the development standards and guidelines to obtain a special use permit in a coastal resources overlay district, the special use permit requirements of § 12.5 must be satisfied. The plain language of § 12.5(1), as above stated, does allow for certain dimensional variances when a special use permit is granted in a coastal resources overlay district. Section 12.5 specifically limits the granting of dimensional variances to the dimensional setbacks found in § 4.3.4 and § 4.3.5. Section 12.5 does not allow for both dimensional height variances and a special use permit.
It is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance. Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981); Town of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573 (1973); Nunes v. Town of Bristol, 102 R.I. 729, 737,232 A.2d 775, 780 (1967). In construing the language of § 12.5, this Court is guided by the maxim expressio unius est exclusio alterius, i.e., the mention of one is exclusion of another.Murphy v. Murphy, 471 A.2d 619 (R.I. 1984) (citations omitted.). Although this principle is an aid, it should be used cautiously to further rather than to defeat legislative intent. Volpe v.Stillman White Co., 415 A.2d 1034, 1036 (R.I. 1980).
While the Newton case prohibits the allowance of both a special use permit along with a dimensional variance, § 12.5 clearly allows the Board to grant both special use permits and dimensional variances from setback requirements in coastal resources overlay districts. The phrase "variances from dimensional setbacks" found in § 12.5 references the setback requirements of § 4.4, but it fails to reference the 30 foot height restriction found in § 6.4. As the ordinance specifically mentions "variances from dimensional setbacks" in clear and unambiguous language while not referencing any other type of dimensional variance, § 12.5 must be strictly construed to allow only for the specified dimensional variances articulated in § 12.5.
The DiLeonardos requested a special use permit along with dimensional variances from the Board. As in Newton, the relief sought by the DiLeonardos deviates from the special use standards set forth in § 12.5. The Board's granting a dimensional height variance enlarges and extends the special use permit in direct contravention of § 12.5 which specifically limits dimensional variances to dimensional setbacks in coastal resource overlay districts. Therefore, the Court finds that the Board exceeded its authority in granting a six foot dimensional height variance while at the same time granting a special use permit to build in a coastal resources overlay district.
After review of the entire record, this Court finds that the decision of the Board is in excess of authority granted to the Board and is affected by error of law. Substantial rights of the petitioners have been prejudiced. This Court finds that the Board exceeded its authority granted by the Narragansett Code when it granted the DiLeonardos and the Garrahans a dimensional height variance along with a special use permit to build on Lot 26 B-2. Accordingly, the decision of the Board is reversed.
Counsel shall prepare the appropriate judgment for entry.
[1] Initially, the plan was approved by both the Narragansett Planning Board and the Coastal Resources Management Board pursuant to § 4.4(b).
[2] The original plan submitted to the Planning Board and CRMC requested a 12 foot height variance. Subsequent to that approval, the DiLeonardos devised a new plan and submitted that to the Board whereby only a six foot height variance is required.
[3] The Board approved the plan subject to the following restrictions:
 "1. That a row of haybales (sic) be placed at the edge of any area of disturbance, parallel to grade and downslope (sic) from the disturbed area prior to the start of any construction. . . .
 "2. That any area of disturbance be landscaped to eliminate the potential for erosion. . . .
 "3. That the driveway inside the gateway and on lot 26-2-B be constructed of a permeable surface (i.e. Gravel).
 "4. That no fill or structures be placed closer than 50' from the inland edge of the coastal feature (turf line).
 "5. That the area of the proposed driveway within the Sea Spray Way right of way, up to the gateway be built with a gravel subbase (sic) conforming to town standards, and a bituminous surface to match the existing pavement of Sea Spray Way. . . .
 "6. That the gateway on the Sea Spray Way right of way be 15' in width and not have a closeable (sic) gate.
 "7. That no changes to the platted boundaries of Sea Spray Way cul-de-sac be allowed.
 "8. That the applicant provide a plan to minimize runoff and drainage impacts to tidal pools on the bare rock area and intertidal (sic) zone. . . .
 "9. That the applicant submit a traffic safety plan for Ocean Road at the intersection of the right of way during the time period when there is going to be fill truck traffic to the Police Department and that it be subject to their approval.
 "10. That any damage caused by the construction activities to Sea Spray Way be repaired and brought up to its original condition by the DiLeonardos.
 "11. That the project be constructed in strict accordance with the site plan submitted and substantial conformance to the architectural plans submitted to the Board.
 "12. That the initial site work, specifically the fill, be done between Labor Day and Memorial Day, during weekdays, so as to eliminate or mitigate any impact upon the neighbors."
[4] Section 45-24-42 specifies that the ordinance must
 "(1) Specify the uses requiring special-use permits in each district;
 "(2) Describe the conditions and procedures under which special-use permits, of each or the various categories of special-use permits established in the zoning ordinance, may be issued;
 "(3) Establish criteria for the issuance of each category of special-use permit, that shall be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town;
 "(4) Provide for public hearings and for notification of the date, time, place, and purpose of those hearings to interested parties . . .;
 "(5) Provide for the recording of findings of fact and written decisions; and
 "(6) Provide that appeals may be taken pursuant to § 45-24-70."