DECISION
This is an appeal from a July 13, 2000 decision of the Town of South Kingstown Planning Board of Appeal (a/k/a the Zoning Board of Review) (hereinafter referred to as the Board of Appeal). In its decision, the Board affirmed the March 28, 2000 decision of the South Kingstown Planning Board (the Planning Board), granting preliminary approval for the Village at South County Commons Land Development Project (the Project). Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-23-71.
 Facts and Travel
The subject property, identified as Assessor's Plat 50, Lots 1 and 4-13, and Assessor's Plat 42, Lots 14-19, is located adjacent to Tower Hill Road (U.S. Route 1) in South Kingstown, Rhode Island. On August 11, 1998, the Project received Conceptual Master Plan approval from the Planning Board. On March 28, 2000, the Planning Board voted to grant Preliminary Approval to the Project in accordance with the plans, documents and supplementary information listed in its twelve (12) page written decision dated March 29, 2000. The appellants appealed the Planning Board's decision to the Board of Appeal.
On May 24, 2000 and June 8, 2000, the appellants, by and through their attorneys, appeared before the Board of Appeal. On July 13, 2000, after consideration of testimony, memoranda of counsel, the Planning Board record and arguments of counsel, the Board of Appeal affirmed the Planning Board's decision. Additionally, the Board of Appeal determined that only one appellant (the Estate of Nathaniel C. Peckham) had standing to appeal the Planning Board's decision.
On appeal to this Court, the appellants (Marc Levitt, Barbara Hale Davis, Wallace Campbell, Jane Smith, Leslie A. Chouinard, South Kingstown Neighborhood Congress, Natalie Cornish, in her capacity as Executrix of the Estate of Nathaniel C. Peckham, Stephen H. Crolius, James Sisson and Campus Cinema, LLC) argue that:
 1) The Board of Appeal erroneously found that Campus Cinema, LLC (Campus Cinema), the South Kingstown Neighborhood Congress (SKNC), Stephen H. Crolius (Crolius) and James Sisson (Sisson) do not have standing to bring their appeals to the Board of Appeal.
 2) The Planning Board erroneously granted dimensional variances from the limits in the South Kingstown Zoning Ordinance (the Ordinance).
 3) The owners of the subject property failed to properly execute an application for local review of the Project.
 4) The approved Conceptual Master Plan expired because the owners of the subject property failed to properly record it within the one year period provided.
 5) The decisions of the Board of Appeal and Planning Board should be reversed because of the improper and erroneous legal advice given to the Boards by their legal counsel.
 6) Planning Board member Richard A. Pike improperly participated in the Planning Board's decision despite a conflict of interests.
 Standard of Review
This court possesses appellate review jurisdiction of a board of appeal's decision pursuant to G.L. 1956 § 45-23-71(b), which states:
 "(b) The review shall be conducted by the superior court without a jury. The court shall consider the record of the hearing before the planning board. . . .
 (c) The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a board of appeal, a justice of the Superior Court may not substitute his or her judgment for that of a board of appeal if he or she conscientiously finds that a board of appeal's decision was supported by substantial evidence. Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in (sic) amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. At 507, 388 A.2d at 824-25)). A reviewing court must simply review the record to determine if competent evidence exists in support of a board of appeal's conclusions. New England Naturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Ass'n of Fire Fighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521 (1977)). Only if the record is "completely bereft of competent evidentiary support" may a board of appeal's decision be reversed. Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1083 (R.I. 1988) (citing Milardo v. Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981)). On review of a Superior Court judgment, the Supreme Court determines whether legally competent evidence exists to support a decision of the Superior Court. Rhode Island Public Telecommunications Authority v. Rhode Island Labor Relations Board, 650 A.2d 479, 485 (R.I. 1994).
 Discussion
A. Standing
"Sections 45-23-25 [to] 45-23-74 [of the Rhode Island General Laws] shall be known as the `Rhode Island Land Development and Subdivision Review Enabling Act of 1992'. The short title shall be the `Development Review Act'." G.L. 1956 § 45-23-25. "Where words or phrases used in [the Development Review Act] are defined in the definitions section of either the Rhode Island Comprehensive Planning and Land Use Regulation Act, § 45-22.2-4, or the Rhode Island Zoning Enabling Act of 1991, § 45-24-31, they have the meanings stated in those acts." G.L. 1956 § 45-23-32. Therefore, the term "aggrieved party" as used in the Development Review Act means: "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or (ii) Anyone requiring notice pursuant to [the Zoning Enabling Act of 1991]." G.L. 1956 §45-24-31(4). The Ordinance adopts this same definition of an "aggrieved party". See Town of South Kingstown Zoning Ordinance, Art. XII, § 8. Pursuant to the Ordinance "[a]n appeal to the Board [of Appeal] from a decision of . . . the Planning Board . . . may be taken by an aggrieved party." Id. at Art. IX, § 909(A) (emphasis added)). Likewise, under the Development Review Act, "[a]n aggrieved party may appeal a decision of the board of appeal, to the superior court. . . ." G.L. 1956 §45-23-71(a) (emphasis added)).
A party is required to be aggrieved in order to ensure "concrete adverseness" between the parties. Blackstone Valley Chamber of Commerce v. Public Utilities Com'n., 452 A.2d 931, 932-33 (R.I. 1982). It is well settled that parties with only generalized grievances or interests, which are held in common by all members of the public, lack standing. See Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 220 (1974); see also Town of Coventry v. Hickory Ride Campground, Inc., et al.,114 R.I. 581, 582, 337 A.2d 233, 234 (1975) (requisite standing to challenge a board of appeal's action does not arise merely from a movant's status as a town resident or taxpayer)).
Only one of the appellants in the instant appeal required written notice of the Planning Board's action under the Zoning Enabling Act of 1991 or the Ordinance. See G.L. 1956 § 45-24-53(c)(2) (requiring that written notice be sent to all property owners within two hundred feet (200') of the Project)); see also Ordinance, Art. IX, § 906(L)(2)(b) (imposing the same written notice requirement as the Zoning Enabling Act of 1991)). Consequently, each of the other appellants must demonstrate that his/her respective property will be injured by the Board's decision in order to have standing for an appeal as an "aggrieved party" under G.L. 1956 § 45-23-71(a) or the Ordinance. See Blackstone Valley, etc., 452 A.2d at 933 (requiring an injury in fact to achieve standing).
Contrary to appellants' assertions, the substantial evidence of the whole record does not support an "aggrieved party" status for any appellant except the Estate of Nathaniel C. Peckham. Thus, only Natalie Cornish, in her capacity as Executrix of the Estate of Nathaniel C. Peckham, has standing to appeal the decisions of the Planning Board or the Board of Appeal. Accordingly, this Court will consider the appellant's remaining arguments.
B. Zoning Incentives
Section 45-24-47(b) of the Rhode Island General Laws states in pertinent part:
 In reviewing, hearing, and deciding upon a land development project, the city or town planning board or commission may be empowered to allow zoning incentives within the project; provided, that standards for the adjustments are described in the zoning ordinance, and may be empowered to apply any special conditions and stipulations to the approval that may, in the opinion of the planning board or commission, be required to maintain harmony with neighboring uses and promote the objectives and purposes of the comprehensive plan and zoning ordinance.
"Incentive Zoning" is defined as: "The process whereby the local authority may grant additional development capacity in exchange for the developer's provision of a public benefit or amenity as specified in the local ordinances." G.L. 1956 § 45-24-31(35). The Ordinance sets forth the required standards in Article 6, Section 605.15. In general, the Planning Board may allow incentives within the Project area in order to encourage a comprehensive system of open space therein. In particular, these incentives may include the following:
 1. Adjustments from the literal dimensional requirements of the zoning ordinance in the instance of the construction, alteration, or structural modification of a structure or lot of record up to a maximum of twenty five percent (25%) of the requirements of this Section.
 2. Increases in permitted residential density up to a maximum of five percent (5%) of the requirements of this Section. Ordinance, Art. 6, § 605.15.
The Planning Board decision dated March 29, 2000 includes specific findings of fact regarding the dimensional adjustments granted. Specifically, these dimensional adjustments have been granted as incentives for the provision of additional open space. The approved Project provides for 35% of the developable area to be used as open space, exceeding the 15% minimum required by the Ordinance. Pursuant to G.L. 1956 § 45-24-47(b) and Section 605.15 of the Ordinance, this Court finds that competent evidence exists in support of the Board of Appeal's conclusion that the Planning Board properly engaged in "incentive zoning".
C. Application for Local Review —
Article V, Section A(4) of the South Kingstown Subdivision and Land Development Regulations (the Development Regulations) requires that:
 Applicants for subdivision approval shall certify in writing and notarized that they are the owner of land being subdivided. If the application for subdivision approval is made by someone other than the owner of the land being subdivided, the applicant shall submit a notarized written statement from the owner authorizing such application.
The appellant asserts that the different corporate entities, which separately own the various parcels comprising the subject property, failed to properly execute an application in accordance with this provision of the Development Regulations. The appellees respond that Mr. Alex Petrucci is the sole member and managing agent of all three corporate entities which separately own the parcels comprising the subject property, and that the record reflects Mr. Petrucci's continuous interactions with the Town in this capacity. While Mr. Petrucci may have signed the original application solely on behalf of North Colony Realty, LLC, on December 28, 1999 he signed an "Owner Authorization Form For Subdivision" as the agent for the owners of all these parcels. Regardless of the purported procedural defect in the Project's original application, this Court finds that substantial rights of the appellant have not been prejudiced by the Town's acceptance of the application for local review.
D. Conceptual Master Plan
Pursuant to Article V, Section C(4) of the Development Regulations, Major Land Development Projects "shall consist of four stages of review: (1) pre-application meeting(s); (2) conceptual master plan; (3) preliminary plan; and (4) final plan." The remaining subsections of Article V, Section C(4) of the Development Regulations, read in their entirety, provide a step-by-step procedure for consideration of major land development applications. On August 11, 1998, the Project received Conceptual Master Plan approval from the Planning Board. Article V, Section C(4)(i) of the Development Regulations states that "[a]pproval of a major land development . . . conceptual master plan shall expire one (1) year from the date of conceptual master plan approval. . . ." Sequentially located in the Development Regulations are provisions which describe the procedural requirements placed upon an applicant and the Town's Administrative Officer following conceptual master plan approval. See Development Regulations, Art. V, §§ C(4)(j) and C(4)(k).
On March 17, 1999, the initial Preliminary Plan was submitted. The Town issued a Certificate of Completeness on January 7, 2000. The appellant asserts that the Conceptual Master Plan approved by the Planning Board expired before the Preliminary Plan was deemed complete by the Town. The appellees counter that their submission of the initial Preliminary Plan rather than the Town's issuance of the Certificate of Completeness tolled the one (1) year time limit described in Article V, Section C(4)(i) of the Development Regulations.
"[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as the construction is not clearly erroneous or unauthorized." Gallison v. Bristol School Committee, 493 A.2d 164, 166 (R.I. 1985). Furthermore, "an agency's construction of its own regulations is entitled to substantial deference." Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed. 117 (1991). "It is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citing Town of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573 (1973); Nunes v. Town of Bristol, 102 R.I. 729, 737, 232 A.2d 775, 780 (1967)). Accordingly, after a through review of the record, this Court finds nothing clearly erroneous or unauthorized about the Planning Board's interpretation of Article V, Section C(4)(i) of the Development Regulations; therefore, this Court defers to the Planning Board's construction of this particular provision of the Development Regulations.
E. Improper and Erroneous Legal Advice
The appellant argues that the Planning Board committed prejudicial error by improperly restricting public input and imposing an incorrect standard of review during the preliminary plan approval process. In particular, the appellant contends that the Planning Board's legal counsel improperly and erroneously advised the Planning Board concerning its authority to review the Project's Preliminary Plan. The appellees respond that the legal advice given to the Planning Board did not result in any prejudicial error or abuse of discretion as evidenced by the detailed findings of fact and conclusions of law in the Planning Board's decision. Notwithstanding any alleged improper or erroneous legal advice given by the Planning Board's legal counsel, this Court is required to review the Board of Appeal's decision pursuant to the statutory standards provided in Section 45-23-71 of the General Laws. Upon review of the record, this Court finds that the Board of Appeal's decision, which concluded that the Planning Board did not commit any prejudicial errors, is supported by probative and reliable evidence, and is not affected by any error of law. See Munroe v. Town of East Greenwich, 733 A.2d 703
(R.I. 1999) (standing for the proposition that judicial review of a decision of a board of appeal is restricted to a search of the record to determine whether the decision is supported by competent evidence or is affected by an error of law).
F. Conflict of Interests
Finally, the appellant urges this Court to overturn the decision of the Board of Appeal due to an alleged conflict of interests on the part of a Planning Board member. Because Richard A. Pike recused himself from a matter involving the Project on August 10, 1999, the appellant argues that Mr. Pike's subsequent participation as a Planning Board member in approving the Project's Preliminary Plan constituted a procedural error, invalidating the Planning Board's decision. However, the record reflects that Mr. Pike had previously recused himself as a precautionary measure, due to potential future business relationships, based upon an Advisory Opinion from the Rhode Island Ethics Commission. See Letter from Martin F. Healey, Executive Director, Rhode Island Ethics Commission, to Richard A. Pike, (July 21, 1999); see also (Transcript of Planning Board Hearing dated February 22, 2000 at 4-7). On February 22, 2000, prior to his participation in the approval of the Project's Preliminary Plan, Mr. Pike stated for the record that he did "not have a business relationship with anyone associated with the [Project]." Id. at 7. Notably, the appellant failed to raise this issue before the Board of Appeal, and the appellant has not directed this Court's attention to any "substantial evidence" of Mr. Pike's alleged conflict of interests at the time of the Planning Board's approval of the Project's Preliminary Plan. See Caswell, 424 A.2d at 647. Thus, this Court finds that Mr. Pike's participation in the Planning Board's decision did not constitute a procedural error, and the Rhode Island Ethics Commission is the more appropriate forum to address any further conflict of interests allegations.
 Conclusion
After reviewing the entire record, this Court finds that the decision of the Board of Appeal was supported by reliable, probative and substantial evidence. Further, such decision was not affected by error of law or procedure which prejudiced appellant's substantial rights. Accordingly, the decision of the Board of Appeal is affirmed.
Counsel shall submit the appropriate order for entry.